## Mary C. McMasters and Husband v. Robert Mills.

On the 7th of April, 1830, W. J. R. claimed to be a single man, and as such solicited and obtained a grant of a league of land as a colonist; and on 24 March, 1834, R. sold to G., who, on 30 September, 1836, sold to M., who, in 1851, conveyed portions of it to the other defendants, who settled upon it. But at the time of the grant R. was in fact a married man, having a wife, and a daughter born in 1823, residing in North Carolina. The wife died in September, 1831, leaving the daughter her only heir. R. resided in Texas from 1826, but never brought his family into the country. The daughter came to Texas in 1839, and was married 21 July, 1843, (before she was twenty-one years of age,) and commenced the suit 8 March, 1855. The court, without considering the question of her original right—that is, whether the property was community or not, or the right of R. to sell—*held*, that her claim was stale and barred by time.

The legal title in 1831 vested in Russell alone. The wife, by neglecting to come to this country, acquiesced in this claim, and if R. held for the daughter, he only held in trust.

When Russell sold, he virtually disclaimed that he held half the land in trust for his daughter, and as M. had no knowledge, either actual or constructive, of her claim, he held adversely to her, and if he had taken possession of the land, his adverse possession could not have been more evident than it was.

The longest time that any claim can run without being barred is ten years. (Paschal's Dig., Art. 4624, Note 1033.)

The statute of limitation is as obligatory in equity cases as in law.

It is the settled construction, that the period of limitation cannot be extended by the connection of one disability with another; that is, one disability cannot be tacked to another.

Appeal from Fayette. The case was tried before Hon. George W. Smith, one of the district judges.

The facts of the case are sufficiently stated by the court. The chief justice fell into an immaterial error as to the time of the sale by Russell. He sold, on the 24th of March, 1834, to one Garrison, and Garrison sold to Mills on the 30th of September, 1836; but the right of Russell to sell before the expiration of six years was not raised. (Paschal's Dig., Arts. 589, 706, 708, Note 364.)

*John W. Harris*, for appellant.

*William G. Webb* and *John T. Harcourt*, for appellees.

MORRILL, C. J.—On the 7th of April, 1830, one William J. Russell, claiming to be a single man, and a citizen of Austin's colony, petitioned for a league of land, founding his claim upon the fact that he was the captain of a sailing vessel running from and to the ports of New Orleans and Texas, and was instrumental in bringing a large number of colonists to Texas.

On the 23d of April, 1831, a league of land was conceded to him, based upon the truth of the statements made in his application.

On the 3d November, 1838, Russell conveyed the league of land to Mills, who in the year 1851 conveyed a large portion of the same to other parties, who settled on the same in February, 1851, and in other months of the same year.

The record further discloses, that in December, 1822, Russell married in the state of North Carolina; that during the year 1823 a daughter was born of this marriage, and that in September, 1831, the wife and mother died in North Carolina, where she had always resided, and that Russell left said state in 1825 and came to Texas in 1826, and was occupied from 1826 to 1837, and perhaps longer, in sailing vessels between New Orleans and Texas.

In 1839 the daughter came to Texas, and on the 21st July, 1843, was married to one William McMasters.

On the 1st of March, 1855, a petition was filed by McMasters and wife in the district court against Mills and others, to whom he had sold the land, and who were living on the same. The petition sets forth the facts hereinbefore stated, but claimed that the league of land was community property of the father and mother of Mrs. McMasters, and that the plaintiff, as the daughter and only heir of her deceased mother, was entitled to one-half of the land, and requested a division of the same.

The answer of the defendant sets forth a variety of legal defenses, and plaintiffs amended their petition, which brought forth other defense.

We conceive it unnecessary voluntarily to take upon ourselves the task of wading through the record of one hundred and twenty pages, and discussing the different legal points raised by the parties, as we believe the case can be decided upon a point that meets us at the threshold.

The plaintiff alleges that she was born on the 26th of September, 1823; hence, on the 26th of September, 1844, she would be of the age of majority. She also alleges that she came to Texas in 1839. She instituted this suit on the 1st of March, 1855, more than ten years after she became of age, being all this time in the Republic or state of Texas.

The legal title to this land vested in 1831 in Russell alone. The recitals therein declared him to be a single and unmarried man. His wife, by neglecting to come to the country from the time of her marriage till her death in 1831, tacitly made the same declaration, or, at least, did not contradict the statements of her husband, in making application for the land, that he was a single man.

Had the wife of Russell come to this country with him, or had she been here at the time the land was conceded to him, he would have been charged with holding the land in trust for the matrimonial partnership, and in that case, had his wife died before the land had been sold, the daughter as her heir would have inherited the estate of her mother; and if, under the supposed case, Russell had sold to Mills after the death of his wife, Mills, as such vendee, taking the title with the knowledge of the trust, could also have been charged with holding the same in trust for the heir of the deceased. But even in this case the legal title would be conveyed to the vendee to all the land, and should he claim the same adversely to the heir, she could have an equitable action against him.

But, to take the facts as they are: When Russell sold

xxx—38

the league of land to Mills he disclaimed holding any part of the same in trust for his daughter, and as Mills had no knowledge, either actual or constructive, of the existence of any such claim or claimants, after his purchase he held the claim adversely to the claim of any and every person. And if he had taken possession of the land, his adverse possession could not have been more evident than it was.

Although the suit is brought as an action of trespass and to try title, as well as for damages, yet all the allegations show that it is an equitable title that the plaintiff claims to have in and to the land. The most that plaintiff can claim is, that her father held the land in trust for herself after her mother's death, and, when he sold to Mills, that the trust still attached, and that thenceforth Mills held one-half of the land in trust, as her father had held.

The defendant has also put in such answers as more properly appertain to a legal rather than an equitable defense, and the cause was tried in the district court as if it really were an action of trespass to try title. The defendant pleaded the limitation act of three, five, and ten years; and, as we before stated, we conceive that this is a case which may properly be ranked among stale demands and equitably barred.

The longest time that any claim of any nature or description can run, without being barred by limitation, is ten years.

Judge Story, in his work on Equity, (§ 1520,) says: "The statutes of limitation, when they are addressed to courts of equity as well as to courts of law, as they seem to be in all cases of concurrent jurisdiction at law and in equity, to which they directly apply, seem equally obligatory in each court. It has been very justly observed that, in such cases, courts of equity do not act so much in analogy to the statutes as in obedience to them.

"In a great variety of other cases courts of equity act upon the analogy of the limitations at law. Thus, for ex-

ample, if a legal title would, in ejectment, be barred in twenty years' adverse possession, courts of equity will act upon the like limitation, and apply it to all cases of relief sought upon equitable titles or claims touching real estate. * * * But a defense peculiar to courts of equity is that founded upon the mere lapse of time and the staleness of the claim in cases where the statute of limitation directly governs the case.

"In such cases courts of equity act sometimes by analogy to the law, and sometimes act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, by refusing to interfere where there has been gross laches in prosecuting rights, a long and unreasonable acquiescence in the assertion of adverse rights."

This doctrine the author established by numerous authorities. In a note in this section it is stated: "Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. When these are wanting, the court is passive and does nothing. If the party be guilty of such laches in prosecuting his equitable title as would bar him if his title were at law, he shall be barred in equity."

In the case of Carlisle v. Hart, 27 Tex., 350, which is a case not dissimilar to this, the court said: "Whatever right the plaintiffs in error may have had to the land in controversy as heirs of their deceased mother, Mary Hart, the colonist, was lost to them by their laches and negligence.

It seems to have been held by this court heretofore, (De Cordova v. Smith, 9 Tex., 129; Tinnen v. Mebane, 10 Tex., 246,) that such equitable rights as the plaintiffs in error are seeking to enforce are not without the bar of the statute of limitation, and a failure to prosecute a suit for ten years from the accrual of their cause of action will conclude a recovery.

From the charges given to the jury it does not seem that the limitation acts were pressed before the judge, and it is

possible that it was considered that the plaintiff, having married before she arrived at majority, and having ever since been a married woman, the act of limitation cannot affect her, as she has always been either a minor or married woman.

In the case of White v. Latimer, 12 Tex., 61, the court quote, and adopt as law, as follows: "It is the settled construction, that the period cannot be extended by the connection of one disability with another." The court referred to a number of authorities wherein the doctrine was recognized, and from the time that decision was made it has been the settled law of this state that one disability cannot be tacked to another. Therefore this cause must be decided just as if the plaintiff had never married.

Because, therefore, the plaintiff neglected to prosecute this suit for more than ten years after arriving at the age of majority, we believe and consider that the claims became a stale demand, and they were not entitled to any relief.

The judgment is reversed, and the cause

DISMISSED.