MATTIE BROWN ET AL. v. O. J. MEADOR ET AL.

(Case No. 3835.)

1. ASSIGNMENT OF ERRORS.— An assignment of errors which does not specify the ground of error relied on is insufficient, and a ground of error not specified at all will be considered as waived unless it be so fundamental as that the court would act on it without an assignment of errors. Steen v. The State, 27 Tex., 88; Pendarvis v. Gray, 41 Tex., 330; Carter v. Eames, 44 Tex., 548; Rules of Supreme Court, rule 24.

2. LIMITATION — MARRIED WOMAN.— The plaintiff's mother died in 1862 when the plaintiff was eleven years old. Her father conveyed land belonging to the community estate in 1863. In 1869 the plaintiff married at the age of over nineteen years, and in 1878 brought suit for her mother's interest in the land sold by her father. The land was adversely occupied under her father's deed for over twelve years before suit was filed. The statute of limitation became operative March 31, 1870, at which time the plaintiff was a married woman and remained under coverture up to the time of filing suit: QUÆRE.— Could she claim the advantage of tacking her disability of coverture to that of minority? 24 Tex., 599; 18 Tex., 376; 30 Tex., 591; 13 Tex., 597; Demarest v. Winkoop, 3 Johns. Ch., 129; White v. Latimer, 12 Tex., 62.

APPEAL from Navarro. Tried below before the Hon. D. M. Prendergast.

The opinion states the case.

*Wm. Croft* and *Rice & McKie*, for appellants.

*Simpkins & Simpkins*, for appellees.

WALKER, P. J.— The appellants, Mattie Brown and her husband, instituted this suit in the district court of Navarro county against the appellees for the recovery of an undivided one-half of a tract of land containing four hundred and eighty-eight and one-fourth acres; which interest in said land Mattie Brown claims to own, in right of inheritance from her mother, who died in August, 1862; alleging that said land was acquired during the marriage of her father and mother; was community property; that her father survived her mother; that defendants hold under conveyances through her father made after the death of her

mother; the petition admits that defendants may be entitled to one-half of said land, and plaintiffs pray to be restored to the possession of the other one-half. The defendants pleaded in their answer a general demurrer, general denial, statutes of limitation of three and five years; and answering to the facts, they set up the defense that Mrs. Brown had received from her father's estate property exceeding in value the community interest of her mother in the lands sold.

The plaintiffs filed a supplemental petition which gave a detailed statement of the property owned by the community estate of her father and mother at the time of the death of the latter, together with an account of her father's two subsequent marriages, his death, and an account of divers financial transactions during his life, to show that at the death of the mother there was property belonging to the community, unincumbered with debts, amounting to several thousand dollars. That afterwards he converted said property into other property — became involved, and died owing $5,000; the petition also alleges in detail many transactions of the deceased father in the acquisition and sales of property from a period before the date of the death of plaintiff's mother, up to the death of her father, showing the acquisition of property by him, during his marriages with his second and third wives; alleges the making of his will, giving to his third wife (Laura E. Brown) all his property for life, with remainder over to plaintiff Mattie Brown; that said Laura E. died afterwards; that the land sued for was sold to one Autrey for two slaves, who were lost to the estate by death or else by the results of the war; that at her mother's death the community owned four grown negroes and two children, which she alleges were sold by her father before emancipation took place. It is further alleged that she paid, after his death, several debts of considerable amount. The supplemental petition does not set forth what amounts of money or property she realized from her father's estate, nor does it deny the specific allegations of the answer, which charge her with having received much valuable, enumerated

property and sums of money, greatly exceeding in value her interest in her mother's estate. The supplemental petition alleges that said plaintiff has never received any of the community property of her mother or anything in lieu of the same, and says "that what little she has received by virtue of her said father's will, she would have received any how, if said land sued for had never been sold or had never belonged to her father and mother." The plaintiff admits that her mother left surviving her as co-heir with her, an infant child, plaintiff's brother, who died in 1864.

The value of the land at the date of the mother's death in 1862 was variously estimated in the testimony from $1 per acre, upwards as high as $2 per acre. It was admitted that the will of plaintiff's father gave her, as a specific bequest, $500, besides her general residuary interest; and the estate never went into the hands of the surviving widow, she dying soon after her husband; the administrator turned the property over to the plaintiff, Mrs. Brown. The evidence shows beyond question that she received from the administrator a considerable amount of property, as is shown by the testimony of the plaintiffs themselves, and also by that of Parish, the administrator; the latter states it in substance, thus: Thirty head of horses worth $450; one stallion worth $250; one hundred and fifty-six acres in Ellis county, which he estimated at $6 per acre, say $936; cows and calves, $50; wagon and horses, $200; house and lot in Corsicana, $400, and $280 in cash; aggregate $2,366. Against which, it is claimed by the appellant, that she and her husband paid certain debts against the estate.

The inheritable interest of the plaintiff was one-half of the mother's interest in the land, her infant brother inheriting with her the other half thereof. At her brother's death she inherited, jointly with her father, his interest, thus giving to her three-eighths interest in the whole tract, which being estimated at $1 per acre would amount to about $183; estimating it at $1.50 per acre would amount to about $274, without calculating interest in her favor.

In view of the whole evidence, which we will not state,

nor even attempt to consider with any view to the ascertainment of exact results as to the balances on either side, it is sufficient to say that the evidence before the court was of that character which warranted it in determining the merits of the case under the issue presented by the answer, which set up the equitable defense that the plaintiff had obtained from her father's estate a full equivalent for the interest which she had inherited from her mother. The judgment of the court, to whom the case was submitted without a jury, was general upon a hearing of all the evidence. There was no motion for new trial, and the only assignment of error which the record enables us to notice is as follows, viz.:

"The court erred in rendering judgment for the defendants, in this, that the court found for the defendants under their plea of the statute of limitations of five years."

It does not by any means appear, in any shape whatever, from the record, that the judgment of the court was necessarily in any wise influenced by the plea referred to. There was no bill of exceptions taken to show any fact connected with the rendition of the judgment beyond that which is disclosed by a judgment which was entered quite in the usual form, reciting the appearance of the parties, the waiver of a jury, the submission to the court of the cause " upon the evidence and law, and the court having fully considered the same, and it appearing to the court that the defendants ought to recover," etc., and thereupon proceeding to render a formal and final judgment in the premises in accordance with the conclusion stated. There was evidence before the court upon the equitable defense which has been stated, as well as evidence in support of the plea of the statute of limitations, upon both or either of which defenses the judgment might well have been based; and, therefore, if, under the evidence and the law applicable to the latter defense, we would determine that the judgment could not be supported, and that a judgment in favor of defendants, based upon that plea, was erroneous, we could not, nevertheless, affirm, from the record before us, that this judgment was rendered by the court upon said plea,

and was founded upon it. To enable us to do so, it must appear directly from the record as a fact that the court did thus render its judgment upon said plea, or else the evidence must be of such a character as to lead to the conclusion that the court must, necessarily, have disregarded all other issues than that which was presented by the plea of the statute.

This assignment, standing alone as the only objection which is made to the judgment, contains the implication that, under said plea, a judgment for the defendants would have been, under the law and evidence, erroneous, and that, if it was not based upon that defense, the judgment is not otherwise complained of, nor objected to. For the reasons given, we conclude that the assignment is not supported by the record, and that it does not appear " that the court found for the defendants, under their plea of the statute of limitations of five years," and we are not, therefore, referred by the appellant's assignment of errors, to any alleged specific error of which he complains; he certainly complains in no respect of the judgment, according to the terms of the assignment, unless the court found against them on the plea of the statute.

"The assignment of errors must distinctly specify the grounds of error relied on, and a ground of error not distinctly specified, in reference to that which is shown in the record, or not specified at all, shall be considered as waived unless it be so fundamental as that the court would act upon it without an assignment of errors, as mentioned in rule 23." Rules of Supreme Court, rule 24; Steen *v.* The State, 27 Tex., 88; Pendarvis *v.* Gray, 41 Tex., 330; Carter *v.* Eames, 44 Tex., 548.

It is not necessary to determine whether the plea of the statute of limitations was or was not maintainable under the facts of this case; all of which that bore upon the issue were plain and uncontroverted; my own view of the subject inclines me to the opinion that the plaintiffs were barred of their action at the date of its institution. The defendant, Meador, has been in possession, using, cultivating, enjoying

and paying taxes on the land since August, 1865, under a deed duly recorded, up to the date of bringing the suit on March 20, 1878. The plaintiff's mother died in August, 1862, at which time she, Mrs. Brown, was eleven years old; her father conveyed the land in 1863 to one Autrey, through whom, by mesne conveyances, the defendants possess and claim under deeds made during the year last named. Mrs. Brown married on the 28th day of March, 1869, at the age of over nineteen years. The defendants proved adverse possession, under deeds duly recorded, during a period of more than twelve years. The right of action existed in 1863, and it was not at any time suspended nor abridged under the law; but the operation of the statutes of limitations were suspended until March 31, 1870. During all, or nearly all, that period of time, Mrs. Brown was a minor in years, but by marriage, when that event transpired, thenceforth became, in law, an adult for all purposes, as has been decided again and again. 24 Tex., 599; 18 Tex., 376.

If the statute of limitations began to run against her at any time up to the date of the institution of the suit, it was necessarily at the date of her marriage; clearly it could not have begun earlier, for she was a minor, and it is insisted in argument that it could not have begun later, for afterwards she was under the disability of coverture. But did it begin to run at the time of her marriage? If disabilities of minority and marriage can be tacked to each other, by reason of the suspension of the operation of the laws of limitations, during the happening of the merger of such disabilities, in such case it must result that the statute has not yet begun to run against the plaintiff; otherwise, however, the statute would start into force and apply to the plaintiff on the 31st of March, 1870, when it went into general effect upon the rights of all citizens alike. My own opinion is, that the statute then began to run against the plaintiff, Mrs. Brown; that as soon as she married she became subject to the rules and principles governing the statutes of limitation, and as soon as they became operative by law, that she would be subject to them, and that, therefore, she could not claim the

advantage of tacking her disability of coverture to that of her minority. 30 Tex., 591; 13 Tex., 597; 12 Tex., 61.

The rule that disabilities cannot be tacked is rested by all the authorities upon the reason that the protection given by the statute is only meant to be extended to such disabilities as exist when the right of action first accrued. Demarest v. Winkoop, 3 Johns. Ch., 129. "That successive or cumulative disabilities are not within the policy or sound construction of the statute," see White v. Latimer, 12 Tex., 62, and the authorities cited.

From the date of marriage of the plaintiffs, more than nine years had elapsed before the institution of suit, and eight years had elapsed after the statute of limitations had resumed their normal action.

We rest our determination, however, of this case, upon the grounds discussed under the assignment of error, and not upon our views of the proper application of the rules of law to the defense of the statute of limitations. I have taken occasion thus, incidentally, and perhaps unnecessarily, to express merely my own individual opinion on the question concerning which the appellant suggests that the district judge erred in his judgment. If he construed the facts as being decisive against the right of plaintiffs to recover against the defense of the statute, I think he was right.

We are of opinion that there is no error in the judgment of the district court, and that it ought to be affirmed.

AFFIRMED.