DAVID FRENCH ET AL. V. JOHN KOENIG ET AL.
No. 1142.

1. **Stale Demand—Community Property.**—A headright certificate for a league and labor of land was granted to W. by special act of Legislature, ten years after the death of his wife, who had immigrated to Texas with him. The land was patented to W., and soon afterwards was sold and conveyed by him. Thirty-five years later, the great-grandchildren of W. brought suit against subsequent vendees for an interest in the land, claiming that it was originally community property as between W. and the children of his deceased wife. *Held*, that the claim was a stale demand, there having been, during such time, no assertion of such equitable claim, and no recognition of the trust which such community title would impose.

2. **Deed of "All Right, Title, and Interest."**—A conveyance reciting that W., being the owner of a land certificate, has sold, alienated, and transferred all his right, title, and interest therein to the grantee, and containing a covenant of general warranty of title, purports to be and is a transfer of the certificate, and not merely of W.'s interest therein.

3. **Notice of Repudiation of Trust—Presumption.**—Where a father conveyed his headright certificate, his son, who then and for a number of years thereafter lived near him, will be presumed, thirty-five years after such conveyance, and after both the father and son have died, to have had notice of such conveyance as involving a repudiation of any trust in the land in favor of the heirs of W.'s wife, on the ground that the land was community property.

4. **Deed—Identity of Parties—Proof by Circumstances.**—The identity of parties to deeds may be shown by circumstantial evidence, for the purpose of enabling defendants in trespass to try title to plead stale demand.

APPEAL from Taylor. Tried below before Hon. T. H. CONNER.

*Tom J. Russell* and *H. L. Bentley*, for appellants.—1. A patent vests the legal title in the patentee, and a conveyance by him to one who has no notice that the title is held in trust for another, conveys full title. Edwards v. Brown, 68 Texas, 329.

2. There was no sufficient evidence to establish the fact that the purchasers from William Lewis, for a valuable consideration paid, had any notice that William R. Willis ever had a wife who lived with him in Texas; or that Lewis had notice of such fact when he purchased from Willis. Edwards v. Brown, 68 Texas, 329.

3. Where one of the purchasers of the land takes it without notice and pays for it, as Phillips did, the subsequent purchaser takes it free from all equities. Moore v. Curry, 36 Texas, 668; Flanagan v. Oberthier, 50 Texas, 379.

4. The court erred in holding that the defendants' plea of stale demand does not apply to the plaintiffs in this cause; for the reason, as stated by the court, that the plaintiffs' title is a legal title, holding by descent under their great-grandmother, instead of an equitable title; when the facts in the case show that said Esther Willis had been dead about ten years before the act of the Legislature was passed granting the certificate to William R. Willis, alone, without naming Mrs. Esther Willis or her heirs as grantees; and that if plaintiffs had any title to the land, it was an equitable one, arising out of facts not apparent in the certificate or patent to the land. Story Eq. Jur., sec. 1520; McMasters v. Mills, 30 Texas, 491; De Cordova v. Smith, 9 Texas, 126; Smith v. Hampton, 13 Texas, 459; Hanks v. Enloe, 33 Texas, 624; McFaddin v. Williams, 58 Texas, 625; Browning v. Pumphrey, 81 Texas, 169; Hemming v. Zimmerchitte, 4 Texas, 159; Rogers v. Green, 35 Texas, 735.

*O'Brien & O'Brien* and *Carter & Lewright*, for appellees.—1. The certificate in question was issued to William R. Willis by virtue of said special act, and he took it for himself and the heirs of his deceased wife, one-half of the same being in trust for the said heirs. Willis was in fact the grantee of but a one-half. Hill v. Moore, 85 Texas, 344, 345.

2. The chain of title through which appellants claim the land describes the land as being the headright certificate issued to William R. Willis, and visited upon the appellants notice that it was a headright certificate, and they are now estopped from denying that it was such. Merrill v. Roberts, 64 Texas, 441; Hill v. Moore, 85 Texas, 335; Daniel v. Bridges, 73 Texas, 152; Wallace v. Preuitt, 1 Texas Civ. App., 231.

3. By reason of the issuance of the patent to the original grantee, William R. Willis, after the transfers made by him to Lewis, Willis held the legal title to the land in contest; therefore the appellees' title to a half of the league of land in contest, on the death of Willis, became a legal title, and appellants' title to one-half of the league was only an equitable title, and appellants' claim thereto is a stale demand. Howard v. Stubblefield, 79 Texas, 3; Bullock v. Smith, 72 Texas, 549; 74 Texas, 334; 68 Texas, 423; Hoofnagle v. Anderson, 7 Wheat., 212; Boardman v. Reed, 6 Pet., 328; White v. Burnley, 20 How., 255; Field v. Seabury, 19 How., 324; Spencer v. Lapsley, 20 How., 272, 273.

4. The transfers or deeds made by Willis to Lewis being quitclaim, were not repudiations of his trust held by him in said certificate and land for the heirs of his deceased wife, if they had had notice thereof, and did not require them to sue for the land, or subject their claim thereto to the doctrine of stale demand, and on the death of Willis, in 1859, they became vested with the legal title to an undivided half of said league of land. Brotherton v. Weatherby, 73 Texas, 471; Merrill v. Roberts, 64 Texas, 444; Gibbons v. Bell, 45 Texas, 423.

HEAD, ASSOCIATE JUSTICE.—On February 7, 1853, the Legislature of this State passed the following special act:

"An Act for the relief of certain persons therein named.

"Section 1. Be it enacted by the Legislature of the State of Texas: That the Commissioner of the General Land Office be, and he is hereby, authorized and required to issue certificate for land to   *  *  * William R. Willis, one league and labor of land.  * * *

"Sec. 2. That no certificate which may be issued under the provisions of this act to the heirs of persons deceased shall be sold by any administrator or otherwise, until the same shall have been located, surveyed, and patented.

"Sec. 3. That no certificate shall be issued under the provisions of this act when a certificate for a like quantity of land, or in satisfaction of the claim to land, has been previously issued or granted by any authority of the Republic or State of Texas, in the name of or upon the rights or claims of any person named herein; and any certificate which may be issued contrary to the provisions of this section shall be null and void.

"Sec. 4. That this act take effect and be in force from and after its passage.

"Approved February 7, 1853."

The land in controversy was patented to William R. Willis, July 7, 1854, by virtue of land certificate number 2745 / 2846, issued to him by the Commissioner of the General Land Office, February 12, 1853, in obedience to the above act.

The evidence is sufficient to sustain the finding of the court below, that this certificate was by the Legislature directed to be issued to

Willis, in consideration of the fact that he immigrated to Texas prior to March 2, 1836, as the head of a family, his wife, Esther, being then living. His wife, however, died in 1842, something over ten years previous to the passage of the act, and left surviving her two sons, John and William, by this marriage, and two daughters of a former marriage. One of these Willis children (William) subsequently died, leaving his father, and one brother of the whole blood and two sisters of the half blood, surviving him.

Appellees claim that the certificate issued under the above act was community property of William R. Willis and his deceased wife, Esther, and they claim the interest of the wife under the surviving Willis child, John. The interest of the two daughters of a former marriage is not represented in this suit.

Appellants claim, that the certificate was a pure donation by the State to William R. Willis after the death of his wife, and was therefore his separate property, and claim under conveyances from him as follows:

First. An instrument in writing, dated November 23, 1852, reciting, that "said Willis having sold said William Lewis, about four years since, one undivided half of his headright claim for land then to be obtained from the government of Texas, for and in consideration of his expenses and trouble for obtaining the same, and said Lewis having attended to the same and obtained said Willis' headright claim for one league and labor, and having paid and agreeing to pay all of the expenses incurred in obtaining said headright, I hereby confirm said sale on my said Willis' part. I, said William R. Willis, bind and obligate myself to make said Lewis a good and sufficient title to my half on or before the 1st day of April next, said Lewis agreeing and obligating himself on his part to pay said Willis $100 in cash and a land certificate for 320 acres, $150 in cash."

Also a second instrument, as follows:

"STATE OF TEXAS, }
"County of Jasper. }

"Know all men by these presents: That I, William R. Willis, of the county of Jasper, being the legal and just owner of a league and labor land claim number 2745/2846, issued February 12, A. D. 1853, to me, the said Willis, in accordance to a Special Act of the Legislature, approved February 7, 1853, by the Commissioner of the General Land Office, have this day sold, alienated, and transferred all my right, title, and interest in and to the said land claim to William Lewis, for and in consideration of services rendered in obtaining said land claim, and $300 cash in hand paid to me by said William Lewis, the receipt whereof is hereby acknowledged. I bind myself, my heirs, and assigns to warrant, defend the same against all claims of any persons whatsoever claiming the same, to him, the said William Lewis, use and benefit forever.

"Given under my hand and scroll by way of seal, this 15th day of March, 1854.

HIS
"WM. R. + WILLIS."
MARK

Also under a transfer made in November, 1854, by said Willis to said Lewis, written on the back of the original patent, conveying all right, title, and interest of the former to the latter in the land therein described.

The evidence is not sufficient to authorize us to overrule the conclusion of the trial judge, that the sale from Willis to Lewis was not made to pay community debts.

John Willis did not die until 1863. He left surviving him his wife, who died in 1890, and one child, who subsequently married appellee John Koenig, and died, leaving minor children surviving her.

Judgment was rendered in the court below in favor of appellees for one-fourth the land in controversy. and in favor of appellants for the remainder.

*Opinion.*—We believe the court below erred in holding appellees' claim not to be a stale demand, under the facts disclosed by this record; and it will therefore be unnecessary for us to consider the interesting questions presented by the other assignments of error.

It seems clear that the certificate and patent issued in pursuance of the special act copied in our conclusions of fact in terms placed the legal title to this land in William R. Willis, the grantee named therein. Edwards v. Brown, 68 Texas, 329; Harvey v. Cummings, 68 Texas, 607; Goode v. Jasper, 71 Texas, 51; Carlisle v. Hart, 27 Texas, 352.

At the time of the passage of this act, Willis' wife, the great-grandmother of appellees, had been dead for about twelve years; and in order to show that they had an interest in this land, it was necessary for them to prove by verbal evidence that the consideration which moved the Legislature to make this grant was the fact that she came to Texas years prior thereto, as the wife of the grantee, and that he should therefore be treated as a trustee for his heirs to the extent of the interest to which she would have been entitled had she been living.

In Carlisle v. Hart, supra, the grant was made in the name of one of the tenants in common (as in this case, if appellees' position as to the right to the certificate under the evidence be conceded), and it was held that the right of the other tenants to enforce the trust in their favor became stale after the unexcused lapse of ten years from the accrual of their cause of action. A similar ruling was made in Brown v. Guthrie, 27 Texas, 610. Also see Montgomery v. Noyes, 73 Texas, 209; League v. Rogan, 59 Texas, 435; Land and Cattle Co. v. Ward, 1 Texas Civ. App., 310; Browning v. Pumphrey, 81 Texas, 163.

In this case, appellees also contend that their claim should not be held barred by laches, because there is no evidence in the record that

notice was ever given to them of a repudiation of the trust in their favor, either by Willis or his vendees. To this, however, it must be replied, that there is no evidence in the record of a recognition of such trust by any of these alleged trustees at any time; nor is there any evidence of such a claim having been asserted, either by appellees or those under whom they claim, for a period of over thirty-five years after the legal title to this land had been vested in others. During this time the surviving son of Mrs. Willis attained his majority, married, and died, leaving a daughter, who grew to womanhood, married, and died, leaving appellees, who now, after this long lapse of time, seek to divest the vendees of their great-grandfather by the introduction of parol evidence to show that their great-grandmother had an interest in a land certificate issued in the name of her husband twelve years after her death.

We believe that no sufficient excuse has been shown by appellees for their failure to sooner assert this claim, and that for this reason the court below should have rendered judgment in favor of appellants for all of the land.

We think it clear that the conveyance from William R. Willis to William Lewis, of date March 15, 1854, must be construed as a transfer of the entire certificate, and not merely a sale of the grantor's interest therein, and that the court erred in holding that it only purported to convey a one-half interest. It recites, that the grantor was the owner of the entire "league and labor land claim;" that he conveys all his "right, title, and interest therein;" and contains a covenant of general warranty of title.

The judgment of the court below will be reversed, and here rendered in favor of appellants for all of the land in controversy.

*Reversed and rendered.*

Delivered May 30, 1894.

ON MOTION FOR REHEARING.

HEAD, ASSOCIATE JUSTICE.—Appellees in their motion for rehearing still insist that their demand had not become stale, because there is no evidence in the record that the heirs of Mrs. Willis had notice of the repudiation of the alleged trust in their favor by William R. Willis, the grantee in the certificate and patent, and those claiming under him.

It is true, no witness testifies to such knowledge on the part of these heirs, but it does appear that William R. Willis, as shown in the original opinion, conveyed the certificate and land as his own, both before and after the issuance of the patent in his name; and at the time of these conveyances, John Willis, the heir of Mrs. Willis, under whom appellees claim, then lived with or near his father, and continued to so live for a number of years thereafter. Both John Willis and William R. Willis died years before the institution of this suit, and we

may suppose that all others who would likely have had knowledge of such actual notice, had it existed, have also long since died.

Under these circumstances, we think it should be presumed that John Willis had notice that the certificate and patent had been issued in the name of his father, vesting the legal title to this land in him, and that he had repudiated any claim that the heirs of his wife might have, by conveying it as his own as far back as 1853 and 1854.

In Carlisle v. Hart, 27 Texas, 353, a case quite similar to this in principle, it is said: "It can not be doubted that they must have been cognizant that Timothy Hart had procured the title in his own name at the time or soon after it was issued. At least, as by the ordinary diligence used by most persons in reference to their own affairs, they would, shortly after the issuing of the title, have ascertained the fact, the law will charge them with a knowledge of it from the time they might have thus learned it. Yet the equitable title which the plaintiffs in error now seek to enforce was not asserted by any proceeding which they have prosecuted to judgment, until set up by the answer and petition of intervention filed in this case in December, 1857, a little more than twenty-three years after the grant of the land to Timothy Hart, and several years after his death."

We think these remarks quite applicable to the case at bar, and that after this great lapse of time actual notice to the heirs of Mrs. Willis of this trust, if it existed, and of its repudiation, must be presumed. To hold otherwise would be to say, that the greater the lapse of time, the more difficult it would become to establish the defense of stale demand to a resulting trust.

Appellees in their motion also contend that appellants are only naked trespassers, at least as to a part of the land, and therefore can not interpose the plea of stale demand.

Without deciding as to whether or not a naked trespasser can interpose this plea, we think it can not be said, from the record as presented to us, that appellants occupy this attitude. In our original opinion, we showed how the title to this certificate and land passed from William R. Willis to William Lewis. These instruments we held, and still hold, upon their face, to purport to convey the entire tract.

The next instrument in the chain of title is described as follows in the statement of facts: "Original deed from Marion J. Phillips to William Lewis, dated May 5, 1860, to 1666 acres of land, being an undivided one-half interest of the three-quarters of a league of land out of the headright league of land granted to William R. Willis by the government of Texas, by virtue of certificate number 2745/2846, and patent number 84, and situated, when patented, in Bexar County, and now in the hands of William Phillips, for and in consideration of a certificate of 1800 deeded to the said Lewis out of the certificate granted to H. R. ———, by the Legislature of Texas, number 2741/2842, and $160 cash in hand paid. This deed of warranty, etc., proved up for record by a subscribing witness, and duly recorded," etc.

The next link in the chain is recited in the statement of facts to be, a "deed of transfer on the back of the deed next above set out, from Marion J. Phillips, for value received, to John J. French, Sr., for all right, title, and interest he had in and to land within described, date October 1, 1878, without being to his (French's) heirs or assigns, without habendum clause, and without warranty."

The next instrument is a deed from William Lewis to John J. French, in which the land conveyed is described as follows: "1655 acres of land, situated in Bexar County and in the unorganized territory of Taylor County, less one-fourth, less 1107 acres off the west side of the headright of William R. Willis, by virtue of patent number 84, issued to said Willis by E. M. Pease, Governor of the State of Texas, on the 7th day of July, 1854, the same being the locative interest of Brown and Griffin, having a deed to the same, and less 1666⅔ acres; an undivided interest of the balance of the three-quarters of a league owned by Marion Phillips, the said 1655 acres sold to the said John J. French being the undivided balance of the three-quarters of a league of the said headright of the said William R. Willis, and patented as above described, and owned by the said M. Phillips; and I, the said Wm. Lewis, for and in consideration," etc.

Construing these extracts from the statement of facts together, there would seem to be a mistake in describing the first one of these instruments as being a conveyance from Marion J. Phillips to William Lewis, and that it should have been a conveyance from William Lewis to Marion J. Phillips. It will be observed that the latter part of this instrument states the consideration to have passed from Phillips to Lewis, and it is hard to understand why he should be making a deed and at the same time paying the consideration. This also receives support from the fact that Phillips, and not Lewis, makes the conveyance on the back of this instrument, and is made clear by the oral testimony of Phillips, admitted without objection, which shows him to have been a purchaser from, and not a seller to, Lewis.

But conceding that we are bound by the literal statement as contained in the record, and that these two instruments do not show a conveyance from Lewis to Phillips, the recitals in the next one, from Lewis to French, clearly do show such a conveyance. In this instrument, copied above, it is clearly stated that Phillips is the owner of an undivided interest of 1666⅔ acres in this survey. That this is sufficient evidence of a conveyance from Lewis to Phillips, we think there can be but little question. Kimbro v. Hamilton, 28 Texas, 560; Shortridge v. Allen, 2 Texas Civ. App., 193.

It is admitted that appellants are the heirs of the grantee in the conveyance from Phillips to French; and by this conveyance they are therefore shown to be the owners of an undivided interest of 1666⅔ acres, and by the deed from Lewis to French they became the owners of his undivided interest of 1655 acres, making 3321⅔ acres in all.

The next instrument in appellants' chain of title is a deed from William Lewis to Josiah D. Brown and Thomas Griffin to land described as the west one-fourth of the headright league of land patented to William R. Willis, giving field notes, etc. This deed is dated July 24, 1854.

The next deed is from Thomas Griffin to E. Brown, dated March 1, 1858, for all his right, title, and interest in and to the land described in the foregoing deed.

The next deed is from Elijah Brown and wife, Sarah Brown, to Robert Carter, dated May 2, 1868, for land described as a certain tract or parcel of land lying on the waters of the Clear Fork of the Brazos River, in Bexar County, and State aforesaid, being one-fourth of the headright league of land patented to W. R. Willis, and giving field notes of the west quarter of the league.

The next deed is from Richard Carter and wife, Margaret E. Carter, to William G. Bell, for the land described in the next preceding conveyance. This deed was made January 29, 1875.

Then follows regular chain of title from Bell to J. J. French, Sr., admitted as aforesaid to be the ancestor of appellants.

It will thus be seen, that if Robert Carter, the grantee in the deed from Elijah Brown, be the Richard Carter who made the deed to Bell, appellants' title would be clear to an undivided half of the Brown and Griffin west quarter; and if Elija Brown be the representative of Josiah D. Brown, one of the grantees in the conveyance from Lewis to Brown and Griffin, their title would be clear to the entire survey.

As tending to support this view, it may be stated that the conveyance from Griffin to E. Brown referred to above purports to have been made "for the purpose of a division of land between me (Thomas Griffin) and the heirs of J. D. Brown." The record, however, fails to furnish affirmative evidence showing the death of J. D. Brown, and that E. Brown was his heir, or that Robert and Richard Carter were the same person. We believe, however, the recitals in these instruments, with the other attendant circumstances, furnish sufficient evidence of this, at this late date, to relieve the parties in possession of the land, and claiming thereunder, from the charge of being mere trespassers, and therefore deprived of the right of defending their possession by the interposition of the plea of stale demand. It has been more than once held in this State, that a deed can be established by circumstantial evidence (Bounds v. Little, 75 Texas, 316; Crain v. Huntington, 81 Texas, 614); and we see no reason why the identity of these parties can not be shown in the same way for the purpose here intended to be accomplished. See case of Auerbach v. Wylie, 84 Texas, 615, as to the use of recitals in deeds for the purpose of identification, etc.

If, however, we are in error as to this, the judgment should at least be reversed and the cause remanded, because as rendered, it gives to

appellees an undivided interest in the entire tract, when they should be confined to their interest in this specific one-fourth.

The motion for a rehearing will therefore be overruled.

                                                        Motion overruled.

Delivered October 24, 1894.