LOOMIS et al. v. COBB.

(Court of Civil Appeals of Texas. El Paso. June 5, 1913. Rehearing Denied June 26, 1913.)

1. HUSBAND AND WIFE (§ 274*)—CONVEYANCE TO HUSBAND—INTEREST OF WIFE.

Where premises in controversy were conveyed to a husband by a town, no beneficial interest in the property vested in the wife on the face of the deed, her interest being equitable only, and hence her heirs by a former husband inherited no such interest in the land as would defeat the rights of an innocent purchaser for value from the husband after the wife's death.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1026–1031; Dec. Dig. § 274.*]

2. HUSBAND AND WIFE (§ 274*)—BONA FIDE PURCHASER—NOTICE—BURDEN OF PROOF.

Where defendants acquired the legal title to certain land in controversy for a valuable consideration, the burden was on plaintiff to prove notice to them of the rights of the heirs of the widow of the first grantee in order to subordinate defendants' legal title to the equitable interest acquired by such heirs.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. § 274.*]

3. VENDOR AND PURCHASER (§ 230*) — BONA FIDE PURCHASER—"CONSTRUCTIVE NOTICE."

A purchaser has constructive notice of every matter connected with or affecting his estate which appears by recital, reference, or otherwise on the face of any deed which forms an essential link in the chain of instruments through which he deraigns his title, since any description, recital of fact, or reference to other documents puts the purchaser on inquiry, and he is bound to follow up such inquiry until the whole series of title deeds is exhausted, and a complete knowledge of all the matters referred to has been obtained; the purchaser on being put on inquiry being presumed to have prosecuted the same until its final result and with ultimate success.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 502–512; Dec. Dig. § 230.*

For other definitions, see Words and Phrases, vol. 2, pp. 1472–1474; vol. 8, p. 7613.]

4. VENDOR AND PURCHASER (§ 230*) — BONA FIDE PURCHASER — NOTICE — CONTENTS OF DOCUMENTS.

Where deeds under which defendants claimed title to certain land showed that the premises had been conveyed by a town to G. in accordance with a specific ordinance, defendants were constructively charged with notice of the contents of the ordinance and of the fact that it provided that, in the disposition of the unappropriated public lands of the town, entire surveys could be granted only to married men, and that single men could only be granted undivided half interests therein, etc., and that the land when so conveyed to G. was community property of himself and his living wife, which also put defendants on inquiry as to the death of the wife and of the existence of the rights of her heirs.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 502–512; Dec. Dig. § 230.*]

5. VENDOR AND PURCHASER (§ 230*) — CONSTRUCTIVE NOTICE—PRESUMPTIONS.

The rule that notice of a city ordinance under which a deed was executed was chargeable to a subsequent purchaser of the title is based on the legal presumption that information has been communicated to or acquired by the purchaser and is therefore rebuttable and not conclusive.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 502–512; Dec. Dig. § 230.*]

6. VENDOR AND PURCHASER (§ 230*) — CONSTRUCTIVE NOTICE—DILIGENCE.

Where a purchaser of land was charged with notice that the land was originally conveyed pursuant to a city ordinance limiting conveyances of whole surveys to married men, the fact that on inquiry it was discovered that the ordinance had been lost or destroyed did not constitute sufficient diligence to relieve defendants from the effect of notice of the contents of the ordinance which they could have otherwise discovered by the exercise of reasonable diligence.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 502–512; Dec. Dig. § 230.*]

7. TRESPASS TO TRY TITLE (§ 25*)—DEFENSES —LACHES.

In trespass to try title, where plaintiff has a title, whether legal or equitable, sufficient to sustain the action as distinguished from a mere equity which would entitle him to acquire title, his right to recover cannot be barred by laches merely, but only by adverse occupancy in the manner and for the length of time prescribed by the statute of limitations relating to suits to recover land.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 30, 31; Dec. Dig. § 25.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Trespass to try title by Zach Lamar Cobb against Laura A. Loomis and others. Judg-

ment for plaintiff, and defendants appeal. Affirmed.

Loomis & Knollenberg, of El Paso, for appellants. Zach Lamar Cobb, of El Paso, pro se.

HIGGINS, J. Appellee Cobb brought this action in trespass to try title against the appellants Laura A. Loomis, A. M. Loomis, R. W. Loomis, Marie L. Loomis, Pansy L. Latta, W. B. Latta, Annie L. Webb, and M. H. Webb to recover survey No. 154, block 1, of the San Elizario grant, containing about 61 acres. The case was tried before the court upon agreed facts, and judgment rendered in appellee's favor.

We will not undertake to set out in full the statement of the agreed facts, but will condense the same, quoting therefrom verbatim only when it appears advisable to do so.

The premises in controversy were owned by the town of San Elizario and by deed dated March 14, 1882, the town, acting by its mayor, G. N. Garcia, conveyed the same to Jesus Gutierres. In the deed it was recited that it was executed "by virtue of authority vested in me as such mayor, and in accordance with the ordinance of the town council of the town of San Elizario entitled 'An ordinance to provide for surveying, adjusting and defining the boundaries of private land grants within the corporate limits of the town of San Elizario, Texas, and to provide for the division and granting of the unappropriated public lands belonging to the corporation of San Elizario, among the inhabitants thereof,' passed and approved on June 20, 1881, in consideration of one dollar, to me paid by Jesus Gutierres, and he having complied with the provisions and accepted the conditions of the above act, do grant, sell and convey," etc.

The ordinance referred to in the above-mentioned deed, among other things, provided that, in the division and granting of the unappropriated public lands belonging to the corporation among the inhabitants thereof, entire surveys should be granted to married men, and to single men there should only be granted undivided one-half interests in surveys; that is to say, entire surveys should be conveyed to married men, and in cases of single men a survey should be conveyed to them jointly. The ordinance above noted, at the date the agreement with regard to the facts was entered into, was lost or destroyed and had been lost or destroyed for many years, and its whereabouts were unknown, and whether or not it is now in existence is unknown, and such fact has been unknown for many years. The corporation of San Elizario was dissolved in 1885 and the ordinance, together with the other archives of the corporation, was delivered for safe-keeping to the county clerk of El Paso county, and no one knows what became of the ordinance after that time. Prior to the execution of above-mentioned deed, Gutierres was married to Dolores Bustillos, and she was living with him as his wife at the time of the execution and delivery of said deed. On March 3, 1887, Gutierres by deed of that date conveyed said premises to Loretto Alarcon, which deed was recorded in the El Paso county records, and by deed dated March 8, 1887, recorded March 10, 1887, Loretto Alarcon, joined by her husband, Martin Alarcon, conveyed the premises to A. M. Loomis. A. M. Loomis died intestate in 1901, leaving as his heirs his wife, Laura A. Loomis, and children, A. M. Loomis, Jr., R. C. Loomis, R. W. Loomis, Pansy L. Latta, wife of W. B. Latta, Annie L. Webb, wife of M. H. Webb. R. C. Loomis is dead and his widow, Marie Loomis, is his sole heir. R. C. Loomis, by deed dated January 5, 1906, conveyed his interest in the premises to R. W. Loomis in consideration of $1,000, and on February 3, 1906, R. W. Loomis conveyed the premises to Laura A. Loomis in consideration of $1,000, and on March 13th Mrs. Laura A. Loomis, Mrs. Webb, and Mrs. Latta, the last two named joined by their respective husbands, conveyed the premises to A. M. Loomis, R. C. Loomis, and R. W. Loomis in consideration of the sum of $300. On April 29, 1908, A. M. Loomis, Jr., conveyed the same to Ralph W. Loomis in consideration of $1,150, and on December 17, 1909, Ralph W. and Marie Loomis conveyed to Laura A. Loomis, Mrs. Latta, and Mrs. Webb the premises in controversy for a valuable consideration. The agreement stipulates: "That the defendants herein are bona fide purchasers of said survey, for value, and without notice of any right, title, or interest in said Dolores Alarcon de Gutierres, and her heirs, except the notice charged, if any be charged, to them by the said deed from San Elizario to said Gutierres, and the ordinance therein recited, and that they and those under whom they claim have rendered said property for taxation and paid the taxes thereon from the date of the purchase thereof by the said A. M. Loomis."

Dolores Gutierres died about April 15, 1886. There was no issue of the marriage of the said Jesus Gutierres and Dolores, but Dolores had children by a prior marriage with one Bustillos, and these children survived her. They did not live at the home of Jesus Gutierres. The said children and heirs of Dolores, in the year 1909, conveyed to appellee Cobb an undivided one-half interest in the premises in controversy. The children of Dolores were of age at the time of her death. The children and heirs of Dolores paid no taxes on the premises, nor did they render the same for taxation prior to the date the same was purchased by Cobb. The agreement states that Cobb was a bona fide purchaser of said one-half interest from the heirs of Dolores, but it further states that he bought with full notice of the various deeds under which the appellants claim and of the fact that they claimed to own the entire survey in fee-simple title.

It is further agreed that appellants had no actual notice of the claim of the said Dolores until the same was acquired by Cobb. Appellants A. M. Loomis, Jr., and M. H. Webb knew Jesus Gutierres and knew at the time of their purchase that he had no children. There were no community debts of Gutierres and his wife Dolores. Garcia, the mayor of San Elizario, who executed the deed to Gutierres, is living, and ever since the date of the execution of the deed has lived in the town of San Elizario in El Paso county and is familiar with the terms of the ordinance recited in the deed. "The defendants in this case who hold the title through and under A. M. Loomis, now deceased, as aforesaid, to whom the Alarcons executed the deed aforesaid, at the time and prior to their purchases hereinbefore listed and described, made diligent inquiry and search for said ordinance, and were informed prior to their several purchases that said ordinance was lost or destroyed, and had been so lost and destroyed many years prior to their said purchase. No further inquiry or search was made by defendants." The record does not disclose the date upon which Cobb filed his suit, but we take it that it was some time subsequent to the date of his deed from the heirs of Dolores, and the agreed facts state that this deed was obtained by him in the year 1909.

As his findings of fact the trial court adopted the agreed statement of facts. His conclusions of law are quite lengthy, and it would serve no useful purpose to set the same out in full here. Briefly stated, he found that appellants were constructively charged with notice of the contents of the ordinance referred to in the deed to Gutierres, and that the ordinance itself disclosed that married men only were qualified purchasers of entire surveys, and therefore a purchaser with knowledge of the contents of the ordinance would be charged with notice of the fact that Gutierres was a married man; that under the authority of Hill v. Moore, 85 Tex. 339, 19 S. W. 162, a purchaser would be charged with knowledge of the equitable interest owned in the land by the children of the deceased wife; that, while the ordinance in question was lost, yet the fact that the title of the appellants was deraigned under the ordinance placed them upon inquiry in regard to its contents, and, in order to sustain the plea that they were innocent purchasers for value, the burden was upon them to show that they had made proper inquiry and investigation in order to rebut the constructive notice furnished by the ordinance, and, there being no evidence to show that they exercised any diligence whatever to ascertain the contents of the ordinance, they therefore could not be protected as innocent purchasers. He further found that the issues of limitation and stale demand pleaded by appellants were not raised by the agreed facts.

The first assignment complains of the over-ruling of a general demurrer to the petition. The petition was in the ordinary form, appropriate in actions of this character, and the demurrer was properly overruled. The remaining assignments will not be discussed in their order or in detail, but we will confine ourselves to what is conceived to be the controlling questions in the case.

[1] The premises in controversy having been conveyed to Jesus Gutierres by the town of San Elizario, no beneficial interest therein upon the face of the deed appearing to be vested in the wife, Dolores, her interest in same was equitable. The entire legal title was vested in the husband, and her heirs by the former husband inherited no such interest in the land as would defeat the rights of an innocent purchaser for value from Gutierres after her death. Patty v. Middleton, 82 Tex. 586, 17 S. W. 909; Hensley v. Lewis, 82 Tex. 595, 17 S. W. 913; Woodburn v. Texas, etc., 153 S. W. 365; West v. Keeton, 17 Tex. Civ. App. 139, 42 S. W. 1034; Brackenridge v. Rice, 30 S. W. 588; Daniel v. Mason, 90 Tex. 244, 38 S. W. 161, 59 Am. St. Rep. 815; Mangum v. White, 16 Tex. Civ. App. 254, 41 S. W. 80; Malry v. Grant, 48 S. W. 616; Oaks v. West, 64 S. W. 1036; Davidson v. Green, 27 Tex. Civ. App. 394, 65 S. W. 1111; McCoy v. Cunningham, 27 Tex. Civ. App. 476, 65 S. W. 1085. Appellants have the legal title by virtue of the conveyance from Jesus Gutierres to A. M. Loomis, and appellee Cobb has the equitable title to an undivided one-half interest acquired from the heirs of Dolores.

[2] Appellants having thus acquired the legal title for a valuable consideration, then, in order to subordinate the same to the equitable interest acquired from the heirs of Dolores, the burden of proof rested upon Cobb to affect them with notice of the rights of the heirs. McBride v. Moore, 37 S. W. 450. Appellants had no actual knowledge of the fact that the lands belonged to the community estate of Jesus Gutierres and his deceased wife, nor of the fact that the wife had children by a former marriage, and, unless they be constructively affected with notice thereof, their legal title must prevail.

[3] It is a familiar and thoroughly well-settled principle of realty law that a purchaser has constructive notice of every matter connected with or affecting his estate which appears by recital, reference, or otherwise upon the face of any deed which forms an essential link in the chain of instruments through which he deraigns his title. The rationale of the rule is that any description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained.

Being thus put upon inquiry, the purchaser is presumed to have prosecuted it until its final result and with ultimate success.

[4] Applying these rules, it must be held that appellants were constructively affected with notice of the contents of the ordinance of the town of San Elizario referred to in the deed to Jesus Gutierres. 2 Pom. Eq. Juris. § 626; Skov v. Coffin, 137 S. W. 450. And they were therefore charged with notice of the fact that the land was community property of Gutierres and a then living wife, which would place them upon inquiry as to the death of the wife and the existence and rights of her heirs. Hill v. Moore, 85 Tex. 339, 19 S. W. 162; Hardy Oil Co. v. Burnham, 124 S. W. 221. The notice thus imputed discharges the burden imposed upon Cobb and would undoubtedly ordinarily subordinate the legal to the equitable title.

[5] The question thus far is without difficulty, but the record of the ordinance referred to in the deed had been lost or misplaced since the year 1885, when the municipality of San Elizario was abolished, and appellants had made diligent inquiry and search for the record. It is contended that the search and inquiry for the record of the ordinance relieved appellants of the imputation of notice of the contents of the ordinance. This contention involves a further consideration of the doctrine of constructive notice. The rule of notice thus imputed is based upon the legal presumption that information has been communicated to or acquired by a party. The presumption is not conclusive but rebuttable. 2 Pom. on Eq. Juris. § 604.

[6] At section 607 the authority last quoted says: "It may be stated as a general proposition that in all instances of constructive notice belonging to this class, where it arises from information of some extraneous facts, not of themselves tending to show an actual notice of the conflicting right, but sufficient to put a prudent man upon an inquiry, the constructive notice is not absolute; the legal presumption arising under the circumstances is only prima facie; it may be overcome by evidence, and the resulting notice may thereby be destroyed. Whenever, therefore, a party has merely received information, or has knowledge of such facts sufficient to put him on an inquiry, and this constitutes the sole foundation for inferring a constructive notice, he is allowed to rebut the prima facie presumption thence arising by evidence; and if he shows by convincing evidence that he did make the inquiry, and did prosecute it with all the care and diligence required of a reasonably prudent man, and that he failed to discover the existence of, or to obtain knowledge of, any conflicting claim, interest, or right, then the presumption of knowledge which had arisen against him will be completely overcome; the information of facts and circumstances which he had received will not amount to a constructive notice. What will amount to a due inquiry must largely depend upon the circumstances of each case. If, on the other hand, he fail to make any inquiry or to prosecute one with due diligence to the end, the presumption remains operative, and the conclusion of a notice is absolute. The criterion thus laid down will serve to determine the prima facie nature of the presumption in a very large number of the instances which are properly referable to the class of 'constructive notice.'" Thus it is seen that the reference to the San Elizario ordinance in the Gutierres deed affected appellants with constructive notice of its contents and of the community status of the premises conveyed by the deed, and, in order to relieve themselves of and destroy the notice thus imputed, it became incumbent upon appellants to rebut the prima facie presumption which had thus arisen by showing that inquiry had been made to ascertain the contents of the ordinance; that such inquiry had been prosecuted with all the care and diligence which would be required of a reasonably prudent man; and that they had failed to discover that Gutierres must have been a married man in order to acquire title to the land by virtue of the ordinance recited. Upon the question of diligence in this respect the agreed statement of the facts states that they "made diligent inquiry and search for said ordinance, and were informed, prior to their several purchases, that said ordinance was lost or destroyed, and had been so lost and destroyed for many years prior to their said purchase. No further inquiry or search was made." The learned trial court held that under the agreed facts no such inquiry and diligence to ascertain the contents of the ordinance was shown as would relieve appellants of the prima facie presumption of notice imputed to them, and in this view we concur. Their deed was based upon, and its validity was dependent upon, the ordinance referred to, and this court cannot say, as a matter of law, that appellants, upon discovering that the record of the ordinance had been lost or misplaced, were thereby relieved of the duty of pursuing all other legitimate sources of inquiry which might afford the desired information; and it is believed that due care would have prompted a reasonably prudent person to have made further inquiry as to the nature and contents of the lost ordinance. It is, of course, true that in the exercise of due care the desired information might not have been obtained, but that is not the question involved. Appellants were constructively affected with knowledge of the contents of the ordinance and have failed to relieve themselves of the notice thus imputed by a sufficient showing of diligence in making inquiry concerning the same. Hill v. Moore, supra; Hardy Oil Co. v. Burnham, supra; 2 Pom. Eq. Juris., supra.

[7] The further contention is made that,

Cobb's title being an equitable one, its assertion against the legal title is barred as a stale demand. That the holder of the legal title could successfully interpose this defense against a superior equitable title has been unequivocally recognized by the Supreme Court in a number of decisions. Carlisle v. Hart, 27 Tex. 350; League v. Rogan, 59 Tex. 427; Montgomery v. Noyes, 73 Tex. 203, 11 S. W. 138; Howard v. Stubblefield, 79 Tex. 1, 14 S. W. 1044; Browning v. Pumphrey, 81 Tex. 163, 16 S. W. 870; McMasters v. Mills, 30 Tex. 591. Also by the Ft. Worth Court of Civil Appeals in French v. Koenig, 8 Tex. Civ. App. 341, 27 S. W. 1079, and Wichita, etc., v. Ward, 1 Tex. Civ. App. 307, 21 S. W. 128, and in the very recent case of Wolf v. Wilhelm, 146 S. W. 216,. there are expressions by the San Antonio court from which it would appear to be held that under certain circumstances the mere lapse of title, unaccompanied by possession, would bar recovery by the holder of the equitable title.

On the other hand, there are numerous decisions by various of the Courts of Civil Appeals in which it is squarely held that in suits for recovery of land it matters not whether the title asserted by the plaintiff be legal or equitable; if he has title sufficient to sustain an action of trespass to try title as distinguished from a mere equity, which would entitle him to acquire title, his right of recovery will be barred only by adverse occupancy in the manner and for the length of time prescribed by the statutes of limitation relating to suits for recovery of land.

It was so held by the Austin court in N. Y. & T. L. Co. v. Hyland (writ of error refused) 8 Tex. Civ. App. 601, 28 S. W. 206; Schleicher v. Gutbrod, 34 S. W. 657; Creswell v. Waldstein, 28 S. W. 260; Tinsley v. Magnolia Park Co., 59 S. W. 629; Owen v. Land Co., 11 Tex. Civ. App. 284, 32 S. W. 189, 1057; by the Galveston court in Trinity, etc., v. Pinckard, 4 Tex. Civ. App. 671, 23 S. W. 720, 1015; Lochridge v. Corbett, 31 Tex. Civ. App. 676, 73 S. W. 96; Hardy Oil Co. v. Burnham, 124 S. W. 221; Lowry v. McDaniel, 124 S. W. 710; Betzer v. Goff, 35 Tex. Civ. App. 406, 80 S. W. 671; Lyster v. Leighton, 36 Tex. Civ. App. 62, 81 S. W. 1033; Storer v. Lane, 1 Tex. Civ. App. 250, 20 S. W. 852; Morris v. Unknown Heirs, 95 S. W. 66; Punchard v. Masterson (writ of error refused) 103 S. W. 826; Broussard v. Cruse, 154 S. W. 347; by the Amarillo court in Montgomery v. Trueheart (writ of error refused) 146 S. W. 284; by the Texarkana court in Early v. Compton (writ of error refused) 149 S. W. 694; and by the San Antonio court in Mason v. Bender (writ of error refused) 97 S. W. 715. This last-mentioned case is not directly in point.

Blair v. Hennessy, 138 S. W. 1076, by the Galveston court, is somewhat peculiar.

While the discussion of the question there is dictum, Judge Pleasants states the majority are of the opinion under the decisions of the Supreme Court that the defense of stale demand was available but that he did not concur in this view. Notwithstanding this statement of the view held by the majority, we find the contrary held by the same court in the very recent case of Broussard v. Cruse, supra, in opinion by Justice Reese.

While the Supreme Court has never expressly repudiated the principle recognized in its decisions above cited, yet the more recent cases of Duren v. Railway Co., 86 Tex. 287, 24 S. W. 258, Threadgill v. Bickerstaff, 87 Tex. 520, 29 S. W. 757, and Humphreys v. Edwards, 89 Tex. 512, 36 S. W. 333, 434, do not seem to be quite in harmony with the view that stale demand can be asserted as a defense in trespass to try title by the holder of the legal title against a superior equitable title. Aside from a consideration of these last-cited cases, it would seem that the refusal of writs of error in N. Y. & T. L. Co. v. Hyland, Punchard v. Masterson, Montgomery v. Trueheart, and Early v. Compton, all supra, has definitely committed the Supreme Court to the approval of the principle there recognized and is a virtual, if not complete, repudiation of the earlier view that lapse of time alone, unaccompanied by adverse possession, would bar the right of recovery. The contention is therefore overruled that appellee's right of recovery was barred as a stale demand; this court being of the opinion that the true rule is as stated by the various Courts of Civil Appeals in the cases noted, and that this is now the view of the Supreme Court upon the question. The nineteenth assignment is overruled.

It is true that after a sufficient lapse of time it may be presumed, in the absence of contrary evidence, that debts existed which would authorize the survivor to sell community property, but no such presumption can be here indulged, since it is agreed that there were no community debts.