MOORE v. ROCKPORT HOTEL CO. et al.
(No. 5411.)

(Court of Civil Appeals of Texas. San Antonio.
Feb. 17, 1915. Rehearing Denied
March 24, 1915.)

1. MORTGAGES �köö186—VENDOR'S LIEN—PRI-
ORITY.

A deed of trust dated June 12, 1911, ac-
knowledged July 17th, and recorded July 21st,
whereby a purchaser reconveyed part of the
land conveyed to secure one of his vendors,
gave the vendor a prior valid lien as against a
mechanic's lien claimed under a contract with
a hotel company to which, when chartered, the
purchaser conveyed by deed dated and acknowl-
edged July 17th and recorded August 22d;
since any one buying under the deed to the cor-
poration was chargeable with notice of the
time when its charter was procured, and since
no one could have been misled by the fact that
the deed of trust dated June 12, 1911, was not
acknowledged until July 17th, the date of the
deed to, and the charter of, the hotel company,
so as to believe that the deed of trust was ex-
ecuted subsequent to the deed to the company.

[Ed. Note.—For other cases, see Mortgages,
Cent. Dig. §§ 449–455; Dec. Dig. �köö186.]

2. MORTGAGES �köö169 — VENDOR'S LIEN —
RIGHTS OF SUBSEQUENT LIENOR—NOTICE.

On June 12, 1911, one M. and others con-
veyed to one D. certain land, and to secure pay-
ment of the purchase price, evidenced by twelve
notes, three of which were due in 12 months
and three each four months thereafter, express-
ly retained a vendor's lien, which deed was filed
July 20th, and on July 17th the vendors ex-
ecuted to the purchaser a release of the vendor's
lien notes, which release was recorded July 21,
1911. On June 12th the purchaser executed
a deed of trust conveying the south half of the
tract to secure payment of four promissory
notes payable to the order of M., and due re-
spectively 12, 16, 20, and 24 months after date,
which deed was executed and acknowledged
July 17th and recorded July 21st, and by deed
dated and acknowledged the same day and re-
corded August 22, 1911, the purchaser convey-
ed to a hotel company. Held that, on the rec-
ords, a party contracting with the hotel com-
pany for the erection of a hotel on the north
half and for a mechanic's lien thereon, could
not presume that the notes released were those
described in the deed of trust lien, but was ei-
ther chargeable with actual notice, or with
constructive notice which in the usual course of
business would have led to actual notice of M.'s
pre-existing lien as against the south half.

[Ed. Note.—For other cases, see Mortgages,
Cent. Dig. §§ 386–388; Dec. Dig. �köö169.]

Appeal from District Court, Aransas Coun-
ty; F. G. Chambliss, Judge.

Action by C. J. Moore against Mary E.
Davis as individual executrix of the will of
A. L. Davis, deceased, and others. From the
judgment, plaintiff appeals. Reversed and
rendered.

W. H. Baldwin, of Rockport, and E. B.
Cocke, of San Antonio, for appellant. Spell
& Sanford, of Waco, and A. L. Matlock, of
San Antonio, for appellees.

MOURSUND, J. Appellant sued Mary E.
Davis, as independent executrix of the will
of A. L. Davis, deceased, on four notes aggre-
gating $3,333.33⅓, and sought foreclosure

of a deed of trust lien on the south half of
a certain parcel of land in Rockport, known
as "Rocky Point," such foreclosure being
prayed for as against said Mary E. Davis,
her husband, W. R. Davis, Rockport Hotel
Company, a corporation, Charles G. Johnson,
and National Exchange Insurance & Trust
Company, a corporation.

The defendant National Exchange Insur-
ance & Trust Company answered, alleging
that on October 28, 1911, the Rockport Hotel
Company was the owner of said tract of land
known as Rocky Point, and that on said date
such company and one R. S. Cobb entered
into a written contract under which Cobb
was to erect certain improvements upon said
property and said company executed and
delivered to him its three notes for $5,000
each, payable respectively in 12, 18, and 24
months; that said notes are unpaid except
$2,500 paid January 27, 1913, and interest
paid to September 27, 1913; that in said con-
tract the Hotel Company gave Cobb a valid
builder's, mechanic's and materialman's lien
upon said premises; that this defendant, for
a valuable consideration paid by it to Cobb,
became the owner and holder of said notes
by purchase and transfer from Cobb before
the maturity of either of them, and is now
the legal owner and holder. It was further
alleged that the lien granted in said deed of
trust was released; that if not released in
fact yet a release signed by appellant was
filed the same day as the deed of trust which,
on account of the similarity of the descrip-
tion of the notes therein described to those
mentioned in the deed of trust, was calcu-
lated to lead this defendant, as well as R. S.
Cobb, to believe, and did lead them to believe,
that the lien created by the deed of trust
was released, and plaintiff is therefore es-
topped to assert such deed of trust lien as
against this defendant's mechanic's lien. It
was also alleged that the deed of trust was
executed and delivered by Davis after he
had conveyed the land to Rockport Hotel
Company and therefore created no lien. Said
answer contained cross-actions against Cobb,
Johnson, and C. H. Moore, which were vol-
untarily dismissed, and therefore need not be
further mentioned.

Rockport Hotel Company, by its answer,
made the contentions: (1) That the deed of
trust was released; (2) that at the time the
deed of trust was executed and delivered the
land had been conveyed to it. It admitted
the debts and liens claimed by Johnson and
National Exchange Insurance & Trust Com-
pany.

Cobb, Johnson, and Moore adopted the al-
legations contained in the answer of Rock-
port Hotel Company. Johnson in his answer
sued Rockport Hotel Company upon a note
for $10,000 executed by said company to him,
and to foreclose, as against said company
and plaintiff, a deed of trust lien upon the

land known as Rocky Point, which lien he alleged was subject only to that of the National Exchange Insurance & Trust Company.

Various supplemental petitions and answers were filed, but we believe the above statement is sufficient to indicate what the issues were in the trial court.

The trial court instructed the jury to return a verdict in favor of all the defendants as against plaintiff, except the defendant Mary E. Davis, executrix of the estate of A. L. Davis, deceased, against whom they were to return a verdict in favor of plaintiff for the debt sued for. The verdict having been returned, judgment was entered dismissing the cross-actions of National Exchange Insurance & Trust Company against Cobb, Johnson, and C. H. Moore; awarding plaintiff the sum of $4,699.16 against Mary E. Davis, executrix; awarding the insurance and trust company $15,254.12 against the hotel company, and foreclosing its lien; awarding Johnson $12,852 against the hotel company and foreclosing his lien subject to that held by the insurance and trust company. It was further adjudged that the liens of insurance and trust company and Johnson were superior to that asserted by plaintiff, and that such lien asserted by plaintiff be canceled and annulled as against Rockport Hotel Company. Plaintiff appealed.

### Findings of Fact.

(1) On June 12, 1911, C. J. Moore, C. H. Moore, and Chas. G. Johnson conveyed to A. L. Davis the parcel of land known as "Rocky Point," describing same by metes and bounds, as well as by reference to prior deeds thereto, and to secure the payment of the purchase price expressly retained a vendor's lien. The purchase price was $10,000, evidenced by 12 notes for $833.33⅓ each, three of which were due 12 months, three 16 months, three 20 months, and three 24 months after date. The notes are described as "payable to the vendors herein or their order with 8 per cent. interest from date." The deed contained the condition that within 90 days from its date Davis should begin the erection of a hotel building of brick or concrete upon said land to cost not less than $25,000 otherwise the title would revert to the grantors, unless Davis paid the grantors $5,000 in addition to the consideration above mentioned. This instrument was filed for record July 20, 1911, at 9 o'clock a. m.

(2) On July 17, 1911, C. J. Moore, C. H. Moore, and Chas. G. Johnson executed to A. L. Davis a release of the vendor's lien retained in the deed from Davis to them dated June 12, 1913, in which release the notes are described as follows: "Twelve promissory vendor's lien notes all dated June 12, 1911, and all payable to C. J. Moore, C. H. Moore, and Chas. G. Johnson or order." It recites the payment of said notes to C. J. Moore, C. H. Moore, and Chas. G. Johnson, and releases "all the right, title, interest and estate in and to the property above described which we have or may be entitled to by virtue of being the owners of said vendor's lien notes." This instrument was filed for record on July 21, 1911, at 8:35 a. m.

(3) A. L. Davis executed a deed of trust to W. H. Baldwin, trustee, conveying the south half of the parcel of land known as Rocky Point, describing it by metes and bounds, the same being for the purpose of securing the payment to C. J. Moore of four promissory notes, payable to the order of C. J. Moore, described as follows:

"Each of said notes being for the sum of eight hundred and thirty-three and ³³/₁₀₀ dollars, each being dated June 12, 1911, each bearing interest at 8 per cent. per annum from date and each providing for 10 per cent. attorneys' fees in case of default in payment, said notes being due respectively twelve, sixteen, twenty and twenty-four months after date with interest thereon from date until paid, at the rate of 8 per cent. per annum, said interest payable semiannually as it accrues, at the office of C. J. Moore in Rockport, Texas."

This instrument is dated June 12, 1911, but was executed and acknowledged on July 17, 1911, and filed for record on July 21, 1911, at 8:35 o'clock a. m.

(4) A. L. Davis, by general warranty deed dated July 17, 1911, conveyed to Rockport Hotel Company, a private corporation, for a recited consideration of $24,995 in hand paid, said entire parcel of land known as Rocky Point. This deed was acknowledged on July 17, 1911, and filed for record on August 22, 1911.

(5) The charter of Rockport Hotel Company was dated July 17, 1911, and was acknowledged by some of the signers on that date and by one on a date not shown by the certificate of the officer, but was not filed in the office of the secretary of state until August 19, 1911.

(6) On October 28, 1911, Rockport Hotel Company and R. S. Cobb entered into a contract whereby Cobb agreed to furnish all labor and material and to erect a three-story brick veneered hotel building to be erected upon property belonging to Rockport Hotel Company, situated in Rockport, Aransas county, Texas, known as Rocky Point, and more particularly described as follows: "Said building to be erected on the north half of what is commonly known as 'Rocky Point' or the Rockport wharf property, said point containing one acre, more or less." Then follows the description of said Rocky Point by metes and bounds. Rockport Hotel Company bound itself to pay $10,000 cash and to give three notes for $5,000 each, and granted to Cobb "an express mechanic's and builder's lien on said land above described and all improvements made thereon under and by reason of this contract."

(7) On October 21, 1912, R. S. Cobb transferred to National Exchange Insurance & Trust Company said three notes for $5,000 each, as well as the lien securing the pay-

ment thereof. The consideration paid was $9,000 in cash and $6,000 stock in said company. This transfer was filed for record on January 16, 1913.

(8) On July 19, 1912, Rockport Hotel Company executed and delivered to D. R. Scrivner a deed of trust upon the Rocky Point parcel of land, to secure the payment to Chas. G. Johnson of the note for $10,000 described in Johnson's answer.

(9) No controversy exists concerning the amount of indebtedness claimed by each party, so it is unnecessary to describe the notes further than has been done in stating the pleadings.

(10) Davis reported to C. J. Moore, C. H. Moore, and Chas. G. Johnson that he could not build the hotel except through a hotel company; thereupon they discussed ways and means of accomplishing the purpose, and it was finally agreed that Johnson and C. H. Moore should cancel their portion of the purchase-money indebtedness and take stock in the hotel company in lieu thereof, and that C. J. Moore should join in the release of the original purchase-money notes and take new notes secured by a deed of trust on the south half of the property, so as to leave the north half clear in order that a mechanic's and materialman's lien could be given thereon. In accordance with this agreement the release and the deed of trust ,and four new notes were executed contemporaneously, and Davis, on the same day, executed the deed to the Rockport Hotel Company. Davis being unable to pay the interest accrued on appellant's four notes to date when new ones were signed, the deed of trust and new notes were dated back as of the same date as the deed and vendor's lien notes. The release, deed of trust, and deed to the Rockport Hotel Company were all acknowledged before H. B. Baldwin, notary public. The deed of trust and new notes were at once delivered to C. J. Moore, but said Moore left the deed of trust with Baldwin to be filed for record by him, it being understood that the deed from the two Moores and Davis, which was unrecorded, should be sent to Baldwin from San Antonio, and should be recorded first. He filed the deed on July 20th and the deed of trust and release on July 21st. The deed from Davis to the Rockport Hotel Company was left in Baldwin's charge, to be placed of record after the parties had finished the organization of the Rockport Hotel Company. His instructions were to hold the deed until the charter was procured, and after the charter was procured he filed the deed for record.

(11) Chas. G. Johnson had actual knowledge of the transactions stated in the preceding finding at the time the deed of trust was executed to him to secure the $10,000 note held by him.

(12) Rockport Hotel Company had actual knowledge through Chas. G. Johnson, one of its incorporators, of the transactions stated in finding No. 10 at the time it acquired title to the Rocky Point property.

(13) National Exchange Insurance & Trust Company had actual notice of the lien claimed by C. J. Moore by virtue of the deed of trust at the time it purchased the Cobb notes and lien.

(14) There is no evidence showing actual knowledge or notice on the part of Cobb of the lien claimed by C. J. Moore by virtue of the deed of trust at the time the mechanic's lien, before described, was delivered to him.

## Opinion.

[1] The deed of trust executed by Davis to secure the payment to C. J. Moore of the debt sued upon by him created a valid lien upon the south half of the Rocky Point property. There is no evidence to the effect that the deed from Davis to the Rockport Hotel Company was even executed prior to the execution and delivery of the deed of trust; but regardless of whether it was or not, the evidence shows conclusively that it was the understanding and agreement of Davis, C. H. Moore, Johnson, and appellant that appellant was acquiring a deed of trust lien upon the south half of the Rocky Point property, and the conveyance to the Rockport Hotel Company was not delivered, there being no such company, but was placed in the hands of Baldwin to hold until such a company should be chartered by the state. He complied with this agreement, and did not file the deed until such charter had been procured, which was long after the deed of trust was recorded. Any one buying under that deed was chargeable with notice of the time when the charter was procured. No purchaser or creditor could have been misled or injured by the fact that a deed of trust dated June 12, 1911, was not acknowledged until July 17, 1911, the date borne by a deed from the grantor in the deed of trust to the hotel company. No one would be led by that fact to believe that the deed of trust was executed subsequent to the execution of the deed, and certainly as between Davis and appellant, the appellant acquired a valid lien by his deed of trust.

[2] Johnson had actual notice of appellant's lien at the time he acquired his lien. Both Johnson and Cobb were chargeable with notice of appellant's deed of trust, which had been on record for some time when they acquired their liens. No release of the deed of trust was ever executed, but it is contended that Cobb was led by the condition of the records to believe that the deed of trust was additional security for four of the notes described in the vendor's lien deed from C. J. Moore, C. H. Moore, and Johnson to Davis, and therefore the release of said notes described in said deed was a release of all liens held by appellant. The contention is sought to be based upon the principle of estoppel. It is argued that the 4 notes describ-

ed in the deed of trust were of the same date and amount as the 12 notes described in the deed; that the due date thereof corresponded with the time at which the 12 notes mature in sets of three; that the deed merely recited that the 12 notes were payable to the vendors therein, without stating that each note was payable to all the vendors; that the release of the vendor's lien and the deed of trust were filed for record at the same time; that a deed appeared of record bearing the same date as the release, which deed purported to be a conveyance by Davis to Rockport Hotel Company of all of Rocky Point for a cash consideration of $24,995, and any one examining the records would naturally be led to believe that Davis on that day received ample money to pay off all liens, and to conclude that the release was intended as a release of the deed of trust.

But the contention must be weighed in the light of all the facts, and we will call attention to other matters deemed to have a material bearing upon the question. The notes described in the deed of trust were recited to be payable to appellant, and not to appellant, Johnson, and C. H. Moore. In addition, it recited that the interest was payable semiannually at C. J. Moore's office, and no such recital is found in the deed or release. While the deed described the 12 notes as payable to the vendors or their order, the release states plainly that said 12 notes were all payable to C. J. Moore, C. H. Moore, and Chas. G. Johnson, or order. The deed of trust was given upon the south half of Rocky Point, describing it by metes and bounds, and no reason is mentioned in any recorded instrument accounting for one of three joint owners taking a deed of trust upon a certain half of the land in addition to having a vendor's lien with the two others who joined in the deed with him. The release contains no mention of the deed of trust, nor of any such notes as are described in the deed of trust. The release does not contain any general statements which might be considered as covering all indebtedness held against the land by the parties who signed the same. Its language is plain, and it only releases the lien created by virtue of the vendor's lien notes described in the deed and described in such release. In addition Cobb was required to take notice of the statements made in the contract under which he acquired his mechanic's lien. That contract, although it contains no designation of the particular point at which the hotel was to be erected, and though construed by the parties as giving a lien on all of Rocky Point, contains the significant statement that the building is to be erected upon the north half. The instrument was so drawn that it is not entirely clear that the lien was to be upon the entire parcel of land; and a doubt would naturally arise in the mind of any one reading it whether the intention was to give a lien upon the north half or the entire parcel.

The mind would seek for a reason for the special mention of the north half, and the inquiry would naturally present itself whether the lien upon the south half was in fact released.

If this was a question of estoppel, it would also be material that appellant is not shown to have had any interest or part in the transaction by which Davis, on July 17th, executed a deed to Rockport Hotel Company, nor is he even shown to have had notice that such a deed was to be executed on that day.

Although two briefs have been filed in behalf of appellees, and much is said about estoppel, no case is cited in support of the theory that the principle of estoppel applies in this case. In fact only three cases are cited in behalf of appellees, each of which involved a question of notice, and in each the facts were entirely different from those in this case. We think the question of law arising upon this appeal is whether the condition of the record made by the deed to Davis, the release to him, and the deed of trust from him to appellant was such that it can be said that Cobb was not chargeable with notice of the existence of a valid deed of trust lien against the south half of Rocky Point. The record gave him notice of the creation of the deed of trust lien, and also notice that there was no release which mentioned such lien. The description of the notes in the release did not correspond with that of those described in the deed of trust in important particulars. Did he have a right to assume that the notes released were those described in the deed of trust or was he put upon inquiry to ascertain whether or not they were the same? The presumption is that they were not the same, because secured by separate instruments and one set was payable to three persons while the other was payable to one person. Could Cobb overlook these important matters and indulge the presumption that they were the same because of the same date, and corresponding in amount? We do not think so. We think he was absolutely chargeable with notice that no release had been made of the deed of trust lien, but, to say the least, he was certainly called upon to make inquiry, and that inquiry in the usual course of business would have been directed to the appellant. Had he made inquiry of appellant or of the Baldwins he would have ascertained the true facts. When there is anything in the recorded instruments which would put a prudent man upon inquiry, he is then chargeable with notice of whatever an inquiry would reveal.

"Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is also notice of everything to which it is afterwards found that such inquiry might have led, although all was unknown for want of the investigation." Skov v. Coffin, 137 S. W. 454; Wilkerson v. Ward, 137 S. W. 158; Loomis v. Cobb, 159 S. W. 307; Crane v. Wood, 138 S. W. 445.

No inquiry was made by Cobb. We conclude that Cobb had constructive notice of

appellant's lien. The same rule applies to National Exchange Insurance & Trust Company, Johnson, and the Rockport Hotel Company, but as to them need not be invoked because they had actual notice of such lien.

Appellant's second assignment of error, which complains of the refusal to give a peremptory instruction in his favor, is sustained.

The judgment of the trial court being erroneous in so far as it fails to establish and foreclose the lien held by appellant under his deed of trust and to declare it the first lien upon the south half of the property known as "Rocky Point" will be reversed, and this court, proceeding to render such judgment as should have been rendered by the trial court, will enter judgment as follows: That the cross-actions of National Exchange Insurance & Trust Company against R. S. Cobb, C. H. Moore, and Chas. G. Johnson be dismissed without prejudice; that C. J. Moore, appellant, recover of Mary E. Davis, independent executrix of the estate of A. L. Davis, deceased, the sum of $4,699.16 with interest thereon at the rate of 8 per cent. per annum from September 9, 1914, together with his costs incurred in the trial court, and that he take nothing as against W. R. Davis, who was made a party pro forma; and, further, that appellant have judgment against said Mary E. Davis, executrix, the Rockport Hotel Company, the National Exchange Insurance & Trust Company, and Chas. G. Johnson establishing and foreclosing his deed of trust lien upon the south half of the Rocky Point property, and adjudging the same to have priority over the liens of said National Exchange Insurance & Trust Company and said Chas. G. Johnson; that National Exchange Insurance & Trust Company recover of Rockport Hotel Company $15,254.12, with 8 per cent. interest thereon from September 9, 1914, and for foreclosure of its mechanic's lien upon the Rocky Point property, subject to appellant's said deed of trust lien upon the south half thereof; that Chas. G. Johnson recover of Rockport Hotel Company $12,852 with interest thereon at the rate of 8 per cent. per annum from September 9, 1914, and for foreclosure of his deed of trust lien upon the Rocky Point property, subject to appellant's lien and the lien of National Exchange Insurance & Trust Company.