## C. A. BROWNING ET AL. V. J. L. PUMPHREY ET AL.

81  163
81  653

### No. 7030.

1. **Practice in District Court—Failure of Plaintiff to Prosecute.** — Proper practice on the failure of the plaintiffs to be present and prosecute their action of trespass to try title, the defendants having filed no pleadings setting up facts in defense to support a decree removing a cloud, would have required that the cause be dismissed without any action. But we are not prepared to hold that the court did not have jurisdiction to try the cause on its merits and to render a judgment for the defendants even in the absence of plaintiffs and of their attorneys.

2. **New Trial after Term.** — Upon application for new trial after the end of the term at which a judgment was rendered the proper practice is that the entire case be tried upon its merits, and a decree to follow disposing of the case.

3. **Absence of Counsel.**—The absence of counsel of the plaintiffs when the court proceeds to hear and determine the case is not a ground for a new trial when such absence is negligence.

4. **Nonappearance of Plaintiff on Trial.**—If the court was without jurisdiction to try the case and dispose of it when reached in absence of the plaintiffs, then the effect of the proceedings would be that following a dismissal of plaintiffs' suit; they thereafter could take no benefit from the suit so dismissed.

5. **Limitation of Three Years.** — Defendants entered upon the land sued for in April or May, 1884. They held adverse possession continuously thereafter. Suit was brought by some parties August 26, 1887, and by others January 23, 1888. Defendants held under heirs of the patentee. There was no replication avoiding the statute. *Held*, that no other judgment could be rendered than for the defendants.

6. **Stale Demand.**—The plaintiffs in trespass to try title claimed the land as heirs of L. Smithers, who died in 1842. They alleged and introduced testimony tending to show that the land certificate under which the land was secured was bought by one Calvert, administrator of L. Smithers, in 1852, and that Calvert recognized their title until his death in 1867. Calvert, however, obtained title to the certificate from its grantee and in 1856 the patent issued to Calvert. The widow of Calvert deeded the land to her children, who sold to defendant Pumphrey. The defense of stale demand was pleaded. *Held*, that however meritorious the claim of plaintiffs may have been, after the lapse of so many years no court ought to enforce the trust, and especially so against one who bought the legal title that had stood unquestioned for thirty years before he bought, in ignorance of the claim asserted against him.

APPEAL from Jones. Tried below before Hon. J. V. Cockrell. The opinion states the case.

*Bentley & Bowyer*, for appellants.—1. The question as to whether a new trial in any case shall be granted is one for the court alone, not for a jury. But an order granting a new trial once entered and not set aside settles such question, and a charge referring it to a jury is error.

2. In civil cases it is error to charge the jury that it is ever necessary for a party charging a fact relied on, to establish that fact by other than such proof as satisfies the jury as to the existence of such fact. Sparks v. Dawson, 47 Texas, 138–145; Markham v. Carothers, 47 Texas, 21; 60 Texas, 274.

3.   (1) If in the administration of an estate it becomes necessary for the administrator to purchase property on a credit, he will be permitted to do so subject to the approval of the court in which said estate is being administered; and if such purchase is made and reported to the said court, and by said court is approved and confirmed, and the court directs payment for the same out of the funds of the estate, and if in fact said administrator receives said property in his possession for said estate, and so pays for the same, it becomes the property of the estate.   Cock v. Carson, 38 Texas, 284; Reinstein v. Smith, 65 Texas, 247; Pasch. Dig., art. 1337; Hart. Dig., art. 1186.

(2) Or if he so purchases property on a credit and pays for the same out of the funds of the estate, and in his final report as administrator returns said property as the property of the estate, and in his settlement receives credit by the amounts paid out by him for said property and on account thereof, he can not be heard afterward to say the purchase was unauthorized and unlawful, nor will he be heard to claim the property as his own, nor he being dead will his heirs be heard to impeach the legality of the purchase and appropriate said property as their own.   Davenport v. Lawrence, 19 Texas, 317; Price v. McIver, 25 Texas, 769.

(3) Or if an administrator, finding the title to land of the estate in his hands to be in doubt, purchases a land certificate to put on said land and so saves said land to the estate, said property at once becomes the property of the estate, and if he takes title in his own name he takes it in trust for said estate.

*W. R. Neal* and *Jas. H. Burts*, for appellees.—1. The claim of plaintiffs was a stale demand and could not be enforced.

On the first Tuesday in January, 1852, J. S. Calvert bought the certificate from Wm. E. Jones, guardian, on a credit of twelve months. December 20, 1853, he bought the certificate from Gabriel Martinez, the original grantee, and December 15, 1855, the land was patented to him.   It was proved that the patents were filed for record in Bexar County December 11, 1856, and in Jones County July 11, 1882, and properly recorded in both counties.   Cause No. 61 was filed March 24, 1887, and cause No. 72 about same date.   J. S. Calvert paid taxes on the land as his individual property from 1856 until he died, in 1867, and appellees paid the taxes afterward.   Cole v. Noble, 63 Texas, 432; Parker v. Coop, 60 Texas, 111; Williams v. San Saba Co., 59 Texas, 442–445; Carlisle v. Hart, 27 Texas, 350–353; Hunter v. Hubbard, 26 Texas, 537; Walters v. Jewett, 28 Texas, 192–197; McMasters v. Mills, 30 Texas, 591; Connolly v. Hammond, 51 Texas, 635–647; Perry on Trusts, sec. 869; Trafford v. Wilkerson, 3 Tenn. Ch., 701; Newman v. Early, Id., 714; McClure v. Doak, 6 Baxter, 364; Hyden v. Hyden, Id., 406.

2.    There was no legal or equitable grounds for the bill of review,· and hence parties to cause No. 61 should be content with the judgment. They had had their day in court, and lost as well by negligence as on the merits.    They made a motion for new trial and did not appeal. Plummer v. Power, 29 Texas, 6–14; Burnley v. Rice, 21 Texas, 171– 180; Vardeman v. Edwards, 21 Texas, 737–739; Johnson v. Templeton, 60 Texas, 238; Montgomery v. Carlton, 56 Texas, 431–433; Contreras v. Haynes, 61 Texas, 103–106.

3.    There was no evidence (which must be clear, explicit, and be- yond a reasonable doubt) that money of Smithers' estate was used in purchase of the certificate, and hence there was no resulting trust. Pierce v. Fort, 60 Texas, 464–471; Johnson v. Deloney, 35 Texas, 42– 51; Perry on Trusts, secs. 77, 86, 134; Wood on Lim., secs. 435, 441.


STAYTON, CHIEF JUSTICE.—The land in controversy was patented to J. S. Calvert on December 15, 1855, as assignee of a land certificate originally issued to Gabriel Martinez, of which Philip Dimmitt became the owner.    In the partition of his estate the land certificate was set apart to three of his minor children, and under proper order of the Probate Court it was sold in January, 1852, to J. S. Calvert, who was then the administrator of the estate of L. Smithers, deceased, in course of administration in Bexar County.

It is claimed that J. S. Calvert bought the certificate for the estate of Smithers, paid for it as well as for its location out of the funds of that estate, and that he recognized the title of the estate to the land until the time of his death, which occurred on April 18, 1867; and through inheritance from L. Smithers appellants seek to recover a part of the land.

L. Smithers died intestate and without issue in 1842, leaving as his heirs Samuel Smithers and Priscilla Calvert, nee Smithers, brother and sister of the full-blood, and Fleming White and Elizabeth Smithers, nee White, brother and sister of the half-blood.    The sister Priscilla was the wife of J. S. Calvert and survived him, as did six children, and on January 4, 1879, she conveyed the land to their children by a deed that was recorded in the county in which the land is situated on July 12, 1882.    James L. Pumphrey holds under conveyances from the children of J. S. and Priscilla Calvert made in April and May, 1884. On March 24, 1887, the children of Samuel Smithers, then deceased, and the children of Fleming White, also deceased, brought an action against Pumphrey to recover their interests in the league and labor of land, alleging that it was the property of the estate of L. Smithers. That action was disposed of in the absence of plaintiffs or their coun- sel, and on January 23, 1888, they filed their petition, which is in the nature of a bill of review as well as a petition to try title, and by that the vendors of Pumphrey were made parties defendant with him.    On

August 26, 1887, the children of Elizabeth Smithers brought an action against J. L. Pumphrey and his vendees to recover one-sixth of the league and labor of land, basing their claim on the same grounds as did the plaintiffs in the other action. These cases were consolidated, and on trial judgment was rendered for defendants.

When the action brought on March 24, 1887, was called for trial plaintiffs therein did not appear, either in person or by attorney, and the defendants having alleged title in themselves and that the claim of plaintiffs was a cloud upon it and asked that this be removed, the court heard the case upon its merits and rendered a judgment in favor of defendants in accordance with their prayer, after which the plaintiffs filed a motion for a new trial, which was overruled, and from that judgment no appeal was prosecuted.

The answer in that case did not seek any relief that would not have been as fully secured by a judgment in favor of the defendants as by a judgment removing cloud from their title; and proper practice on the failure of plaintiffs to be present and prosecute their action would have required that the cause should be dismissed without any further action. But we are not prepared to hold that the court had not jurisdiction to try the cause on its merits and to render the judgment entered even in the absence of plaintiffs and their attorneys, and if the action of the court in this respect was not proper, plaintiffs might have had relief by appeal.

If, however, no effect ought to be given to that judgment other than a dismissal of the cause, then the cause went out of court as fully as did it under the judgment rendered, and plaintiffs in that cause are not now entitled to any benefit resulting from the fact that the action was brought unless on the trial of this cause they showed such facts as entitled them to have the judgment therein rendered in effect set aside.

The court below on overruling exceptions to the bill of review seems to have set the former judgment aside without hearing evidence, but this was erroneous and evidently done through inadvertence, and on the trial from which this appeal is prosecuted the entire cause was tried on its merits as though the former orders setting aside the former judgment had not been entered. This procedure was correct, and on this branch of the case the only inquiry is, did plaintiffs show such facts as entitled them to relief against the former judgment, whether it be treated as simply a dismissal of the action or a judgment in favor of defendants on the merits?

It may for the purposes of this inquiry be conceded that plaintiffs show such right to the land as would have entitled them at some time to recover, but the uncontroverted fact is that the trial was had ex parte because of the failure of plaintiffs or their counsel to be present, and no sufficient reason nor in fact any reason is shown why the attorneys were not present. Before the term began attorney for defendants had

sought to make an agreement with attorney for plaintiffs to continue the cause for the term at which it was disposed of, but such an agreement was refused, and one of the grounds on which a new trial during the term was sought was that for the want of testimony plaintiffs would not have been ready to try the cause had their attorneys been present.

Judgments, whether of dismissal of a cause or upon the merits, can not in effect be set aside on the ground of absence of attorneys when their failure to be present is purely the result of negligence or indifference to the interests of clients. The attorneys who were expected to try the cause show no reason why they were not present, but other counsel employed do show that their failure to attend court was caused by the just and well founded expectation on their part that other counsel would be present.

If on the facts proved the jury had found that appellants were entitled to be relieved from the effect of the former judgment it would have been the duty of the court below on proper motion to have set the verdict aside. If the judgment which some of the appellants seek in effect to set aside is to be given full effect, then it is conclusive against the rights of all who were parties to that cause, and the writer is of opinion that full effect should be given to it, for the court had jurisdiction over the parties and subject matter, and if there was error in the judgment requiring its reversal that might have been obtained by an appeal to this court. If, however, that judgment could be treated only as a dismissal of the cause in which it was rendered, then the rights of the parties must be determined as though that action had not been brought, and so considering the case there are two reasons why no other judgment than that entered could legally have been rendered.

The defendant Pumphrey pleaded the statutes of limitation of three years, and there was no replication showing the disability of either of the plaintiffs that would prevent the running of the statute. The uncontroverted evidence shows that Pumphrey took possession of the land on the last of April or first of May, 1884, and that he held it continuously until time of trial. Suit by the heirs of Elizabeth Smithers was brought on August 26, 1887, and the present action by the heirs of Samuel Smithers and Fleming White was not brought until January 23, 1888. The land having been patented to J. S. Calvert, one holding through conveyances from his wife and children must be held to be in possession under title, for he has a regular chain of transfer from or under the sovereignty of the soil. Pumphrey's title was complete by limitation when these actions were brought against him. Defendants also pleaded that the claim of plaintiffs was stale.

It may be conceded that it is shown by record evidence, found in the proceedings of the administration of L. Smithers' estate, that the certificate by virtue of which the land was granted to Calvert was purchased by him for the benefit of the estate, that he paid for it some

time after it was bought with proceeds of the sales of property of the estate made to raise money for that purpose, or that he reimbursed himself from money so raised for money of his own with which he paid for the land certificate which was bought by him at guardian's sale on a credit of twelve months, and that he recognized the land as the property of the estate until the time of his death, which occurred in 1867. We think that these facts are shown with all that certainty necessary in cases in which parties are seeking to show that the holder of the legal title is a trustee holding for their benefit, and that in view of the fiduciary relation sustained by J. S. Calvert to the heirs of L. Smithers, the charge of the court was not only misleading but erroneous in reference to the time and manner in which the land certificate must have been paid for with funds of the estate to affect the administrator with a trust. The strict rule in relation to the creation of a strictly technical resulting trust in land under the facts of this case could not be applied; but if this were otherwise the charge in view of the facts was misleading, as was it in reference to the degree of certainty with which the jury were informed the plaintiffs must establish the trust. Conceding these errors in the proceedings, if plaintiffs were not precluded from a recovery by the statutory bar before referred to, was not their claim stale? It seems to us under the uncontroverted facts that it was.

Since 1867 there has been no recognition of the right of plaintiffs or their ancestors; evidence of their right was to be found in a public record of proceedings to which they were in effect parties; an indebtedness to the administrator of over $800 existed on final settlement; neither plaintiffs nor their immediate ancestors ever paid taxes on the lands, but those through whom Pumphrey claims did for many years; the legal title stood in the name of J. S. Calvert and the patents he caused to be recorded in the county in which the land was situated in 1856, and they were recorded in 1882 in the new county of which the land became a part; Mrs. Calvert conveyed the land in 1879 to her children, and the deed by which this was done was properly recorded; one of the heirs of Calvert conveyed one-sixth of the land in 1882, and in 1884 it was all conveyed to Pumphrey. Subsequently to the purchase of the land certificate at guardian's sale J. S. Calvert took a conveyance from the original grantee to himself.

However meritorious the claim may once have been, we are of opinion that after the lapse of so many years no court ought to enforce it, and especially so against one who purchased the legal title that had stood unquestioned for nearly thirty years before he bought in ignorance of the claim now asserted. Hodges v. Johnson, 15 Texas, 575; Brown v. Guthrie, 27 Texas, 611; McKin v. Williams, 48 Texas, 89; Lewis v. Cole, 60 Texas, 341; League v. Rogan, 59 Texas, 435; Carlisle v. Hart, 27 Texas, 350; De Cordova v. Smith, 9 Texas, 129; Montgomery v. Noyes, 73 Texas, 205; Glasscock v. Nelson, 26 Texas, 153.

It is unnecessary to inquire whether the evidence shows that Pumphrey was a purchaser entitled to protection although he had not paid that part of the purchase money secured by negotiable notes executed by him before he had notice of the claims of plaintiffs.

Although there was error in the charges given, as no judgment other than that entered could have been rendered on the uncontroverted facts, it will be affirmed.

*Affirmed.*

Delivered May 22, 1891.