## LEONARD v. BENFORD LUMBER CO. et al. (No. 16.) *

(Court of Civil Appeals of Texas. Beaumont. Nov. 4, 1915. Rehearing Denied Jan. 6, 1916.)

1. VENDOR AND PURCHASER ⬷231—BONA FIDE PURCHASER — NOTICE — RECORDS—INDEX.

To put a purchaser of land on notice of the record in land titles of an excerpt from a judgment in respect thereto, it must be indexed by the recorder, in a book kept therefor, as required by Paschal's Dig. arts. 5015, 5016.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 487, 513–539; Dec. Dig. ⬷231.]

2. VENDOR AND PURCHASER ⬷226 — BONA FIDE PURCHASER—SEARCHING BEHIND PATENT.

A purchaser of land is not required to go behind a patent from the state, in investigating the title, absent a recital therein or in a subsequent link in his chain of title, or some extraneous fact, putting him on inquiry.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 475, 476; Dec. Dig. ⬷226.]

Appeal from District Court, Polk County; L. B. Hightower, Judge.

Action by R. L. Leonard against the Benford Lumber Company and others. From an adverse judgment, plaintiff appeals. Affirmed.

R. E. Minton, of Groveton, and S. H. German, of Livingston, for appellant. Hill & Hill, of Livingston, and Dean, Humphrey & Powell, of Huntsville, for appellees.

MIDDLEBROOK, J. This is a case in trespass to try title to 221 acres of land situated in Polk county, Tex. The suit was originally filed by the plaintiff, appellant, on the 16th day of April, 1910, and final judgment entered therein on the 4th day of January, 1915, the judgment being against the plaintiff, appellant, and also a judgment in behalf of the defendant, appellee, Benford Lumber Company.

On the 21st day of November, 1838, a donation certificate for 640 acres of land was issued by the Republic of Texas, through Charles Mason, acting as Secretary of War, to Lewis Cox. Lewis Cox died in Walker county, Tex., in 1847, testate, but his heirs afterwards set aside his will, and his property was divided by decree of the district court of Walker county, April 17, 1856, and by the terms of the decree the donation certificate for the 640 acres was set apart as a part of the property belonging to his daughter, Minerva I. Rowe. At this time the land had never been surveyed. The survey of the land involved in this suit was made by George Gibson, county surveyor of Trinity county, on May 6, 1860. In 1875 that part of Trinity county which contained the land in question was detached from Trinity county, and by act of the Legislature became a part of Polk county.

The full decree of the partition of the estate of Lewis Cox, deceased, in Walker county, Tex., was never recorded in Trinity county, Tex., but was first filed for record in Polk county on the 1st day of June, 1910, and properly recorded. An excerpt from the decree was recorded in Trinity county on the 7th day of May, 1860; and the records of Trinity county having been destroyed about 1872, the excerpt was again recorded in 1874, in the records of Trinity county. The excerpt is as follows:

"District Court, Spring Term, A. D. 1857.

"Andrew J. Cox and James Cox v. Margaret Leach and Others, Heirs of Lewis Cox, Dec'd. No. 770.

"To Minerva I. Rowe they have set apart a negro girl named Mary, $900; 640 acres, surveyed, but not patented, Lewis Cox's donation claim, $320; the mule Jane, $100; farming and blacksmith tools, $50; cash from No. 1, making $1,378.83."

On the 18th day of July, 1857, Minerva I. Rowe, joined by her husband, John L. Rowe, executed to James C. Dunlap a conveyance of aforesaid donation certificate, which conveyance is in terms sufficient to pass the title to said certificate; and this convey-

ance was filed for record in the office of the county clerk of Trinity county, Tex., on the 7th day of May, 1860, and was refiled for record in said office on the 1st day of January, 1874.

On the 17th day of March, 1860, J. C. Dunlap, by proper conveyance, transferred the said certificate to Wm. R. Leonard, and this conveyance was filed for record in the office of the county clerk of Trinity county, May 7, 1860, and was refiled in said clerk's office for record on the 1st day of January, 1874, and was filed for record in the office of the county clerk of Polk county, Tex., on the 1st day of June, 1910.

Prior to the 19th day of March, 1910, W. R. Leonard had died, and his surviving widow, joined by his heirs at law, except R. L. Leonard, conveyed to R. L. Leonard by metes and bounds the tract of land in controversy in this suit on that day, and this deed was filed for record in the office of the county clerk of Polk county on April 18, 1910. Through this chain of title the plaintiff, appellant, sought to assert his rights and recover the land from the appellee lumber company et al.

Prior to the year 1906, P. R. Rowe, an attorney of Livingston, Tex., learned of the location of the Lewis Cox survey of land, as made by George Gibson, county surveyor of Trinity county, Tex., and investigation led him to believe that by corrections in the field notes of the survey, there was at least a portion of the survey subject to patent, and he thereupon began a search for the heirs of Lewis Cox, and found that Lewis Cox had died in Walker county, Tex. This search finally culminated in the finding of the heirs of Lewis Cox, deceased, and these heirs executed a power of attorney to T. E. Humphrey, the conditions of which were that Humphrey was to do those things necessary to the location and patent of the land, and bearing the expenses thereof for a half interest in the land; and through this power of attorney and two or three later conveyances, all of the heirs of Lewis Cox, deceased, conveyed their interest in the donation certificate to T. E. Humphrey, and these conveyances include the heirs also of Minerva I. Rowe, deceased.

The work of Mr. Humphrey was successful, and on the 15th day of April, 1908, he secured a patent to 221 acres of land under the donation certificate of 640 acres to Lewis Cox, before mentioned.

By proper conveyance in July, 1908, T. E. Humphrey conveyed the land in question to Davidson-Ingram Lumber Company, and the appellee Benford Lumber Company, it is agreed by the parties to the suit, is the successor of the Davidson-Ingram Lumber Company, and owns the Davidson-Ingram Lumber Company's title to the land. This deed was filed for record July 18, 1908, in the office of the county clerk of Polk county.

The plaintiff, appellant, contends that the court erred in not rendering judgment for him for the land sued for; that the record of the excerpt of the judgment in Trinity county was sufficient to put the appellee upon notice of his title; that the recording of the deeds in 1860 in Trinity county also put the appellee upon notice of his rights in the premises.

The appellee contends that the excerpt of the judgment, as recorded in Trinity county, was not notice to the appellee, because it does not give the correct date of the judgment, and does not name all of the parties to the original partition suit, and because it was never recorded in Polk county, Tex., after the portion of Trinity county which contained the land was attached to and became a part of Polk county.

Appellee contends, also, that the abbreviated decree, as recorded in the deed records of Trinity county, Tex., is not constructive notice, because the certified copy read in evidence in the case fails to show on its face, or by the certificates of the clerk who recorded the same, either the first or the last record, that said abstract or abbreviated decree was indexed in the deed records where it was recorded.

Appellee contends, also, that the plaintiff's demand is stale, and for that reason he cannot recover; and that the appellee is a purchaser for value in good faith and without notice of the claim of the appellant, either actual or constructive.

[1] The decree of the partition in the district court of Walker county bears date April 17, 1856, and the excerpt recorded in Trinity county says that the decree was at the spring term of the district court for Walker county, 1857. The excerpt from the judgment which was recorded in Trinity county does not give the names of all of the parties to the suit.

There were no facts in the record which show that any index was made to the record of the excerpt from the judgment, and we are forced to the conclusion that it was not made; otherwise it would have been proved. We believe that it was necessary, under the statute, for this index to have been made, in order to put a purchaser in good faith for value on notice. Our view of the law is, that the very purpose of this index is to assist parties in determining as to the title of land by enabling them to readily ascertain from an investigation of those records what persons, if any, are claiming the land, through such source.

Article 5015, Paschal's Digest, reads as follows:

"Each recorder shall provide and keep in his office a well-bound book, and make and enter therein an index in alphabetical order, to all books of records wherein deeds, mortgages, or other instruments of writing concerning lands and tenements are recorded, distinguishing the books and pages in which each such deed or writing is recorded."

Article 5016 reads as follows:

"Such index shall contain the names of the several grantors and grantees in alphabetical order; and in case the deed be made by a sheriff, the name of the sheriff and the defendant in execution; and if by executors or administrators, their names and the names of their testators or intestates; and if by attorney, the name of such attorney and his constituents; and if by a commissioner, the name of such commissioner and the person whose estate is conveyed."

Our Supreme Court has given weighty consideration to the necessity and utility of the proper indexing of mortgage liens, and deeds, whether to chattels or to realty. In the case of Gullett Gin Co. v. Oliver & Griggs, 78 Tex. 182, 14 S. W. 451, Justice Gaines cites with approval Nye v. Moody, 70 Tex. 434, 8 S. W. 606, in which Justice Walker wrote the opinion. After quoting from articles 3155, 3157, 3158, and 3159, Revised Statutes, Justice Walker says:

"The case was tried by the judge, and he found as a fact that the abstract of the judgment had not been indexed, and that the lien was not fixed by the record without such indexing. The testimony on which the finding was based was amply sufficient. The abstract had not been entered on the index as the statute required." "As the lien is the creature of the statute, it follows that until the conditions to the lien fixed by the statute have been complied with the lien is not established. The indexing so carefully described and provided for cannot be dispensed with by the courts. The terms used in the statute are simple and clear. The meaning and intent are expressed. It is not for the courts to question the policy of the law. They can only apply it to a state of facts ascertained when rights are litigated and the jurisdiction of the courts invoked."

In Gullett Gin Co. v. Oliver & Griggs, Justice Gaines says:

"The third objection to the record of the abstract is of a more serious character. It was indexed, but the index showed only the partnership name of defendants in the judgment. Their names appeared indexed only under the letter M, and in the style of the firm, to wit, 'Mitchell & Scruggs.' The language of the statute is clear and its purpose obvious. 'The index to such judgment record shall be alphabetical, and shall show the name of each plaintiff and of each defendant in the judgment, and the number of the page of the book upon which the abstract is recorded.' Revised Statutes, art. 3058. This means that each name must appear in the index in its alphabetical order. The evident object is that persons searching the records in order to discover the existence of judgment liens may have the means of ascertaining with promptness and certainty whether such liens exist or not. In this case a third person who had no knowledge of the particular judgment dealing with Scruggs, would have been compelled to examine the entire index of the entire record in order to have ascertained that the abstract had been recorded. It is evident, we think, that in this particular the statute has not been complied with either literally or in substance."

And in Schneider v. Dorsey, 96 Tex. 548, 74 S. W. 526, this doctrine is reasserted with approval by Chief Justice Gaines. Can it be said that the brief statement from the judgment can be of less importance than the filing and indexing of a mortgage? The statute that requires the one requires the other. We think it was necessary for the excerpt, or brief statement, of the judgment to show the names of the parties to the suit, and to give the correct date of the judgment. Again, can it be said that the necessity for the proper indexing of such brief statement is of less importance than the proper indexing of a mortgage or deed of trust? The very purpose of the index is to enable those who may be interested in the title to such land, or those investigating the title to such land, to readily ascertain from the index who, if any one, is claiming an interest in the land. As this record stands before us, there was no such index.

[2] The record conclusively shows that appellee and those under whom it claims, made full investigation as to the title to the land; that is, they had their legal counsel to investigate such title, and they reported back to the appellee that the title was good, and we think, under the facts of the case, counsel were warranted in so reporting. Paschal's Digest, art. 5051; Schneider v. Dorsey, 96 Tex. 548, 74 S. W. 526; Gin Co. v. Oliver, 78 Tex. 182, 14 S. W. 451; Thornton v. Mooney, 50 Tex. 161; Russell v. Farquhar, 55 Tex. 355.

As a primary rule of law, we do not understand that a purchaser of land is required to go back behind the sovereignty of the soil, or behind patent from the state. The patent to this land was made to the heirs of Lewis Cox April 15, 1908, and filed for record on the 28th day of May, 1908, in the office of the county clerk of Polk county, Tex.

Nothing occurs of record in Polk county as to Leonard's claim up to the year 1910, and so far as the record shows, no sort of claim was ever asserted by him to this land after the year 1874, when he had the abbreviated statement re-recorded in Trinity county, Tex., and it is to be borne in mind that part of Trinity county which contained this land became a part of Polk county the following year, 1875. With this great lapse of time, we believe that appellee's counsel was warranted in making no further investigation than the records of Polk county would show as to this land. The undisputed evidence shows that appellee gave full value for this land, when it purchased it, and we think under these facts and conditions, it secured the title to the land. Bogart v. Moody, 35 Tex. Civ. App. 1, 79 S. W. 633; Breen v. Morehead, 104 Tex. 254, 136 S. W. 1047, Ann. Cas. 1914A, 1285. In Bogart v. Moody, Justice Gill uses the following language:

"It seems to be fairly well settled in this state that purchasers of land need not go behind the patent in their investigation of title, unless put upon inquiry by some extraneous fact, or by the recitals in the patent, or some subsequent link in their chain of title."

And in the opinion in that case he quotes with approval the opinion in Wimberly v. Pabst, 55 Tex. 592, in which the following language is used:

"To the public generally, a patent to land having been issued by * * * the state car-

ries with it a high degree of faith and credit, as the beginning link in the legal chain upon which all after-acquired title can securely depend. When, therefore, a subsequent purchase is made upon the faith of a patent, regular upon its face, public policy requires that it should constitute an important element in the question of the good faith of the transaction, and should turn the scale in its favor, except in cases of actual notice, or when the law would impute constructive notice of some defect sufficient to defeat it."

The same doctrine is forcibly announced in many of the Texas authorities. Durst v. Daugherty, 81 Tex. 650, 17 S. W. 388; Sickles v. White, 66 Tex. 179, 17 S. W. 543; Browning v. Pumphrey, 81 Tex. 163, 16 S. W. 870.

This case is void of any act or omission on the part of the appellee that would tend toward bad faith or wrongdoing on its part. Everything was done that a prudent person could do to know that it was getting the title to the land, nor did it part with its money until able counsel recommended the title good. It then paid full value for the land, thereby demonstrating its good faith and innocence. There is nothing in the patent nor in any link of the appellee's chain of title that would have the least tendency to put one upon inquiry. All of the heirs of Lewis Cox join in the title to appellee's vendor, and the chain of title shows affirmatively that they are all the heirs of Lewis Cox, deceased. So nearly 40 years nothing had been done by appellant save to re-record the excerpt of the allotment of the certificate to Minerva I. Rowe in Trinity county; and more than 50 years passed by from the time appellant bought the land chattel awarded to Minerva I. Rowe, and had done nothing towards having the land patented to him; and, then, after another had done the work and met the expense of hunting up the heirs of Lewis Cox, and securing letters of patent, and after the land is conveyed by this chain of title for its full value, with nothing in its chain of title to put it upon inquiry as to any claim of appellant, we think appellant's viewpoint is not tenable, and Holmes v. Johns, 56 Tex. 52, 53, Taylor v. Harrison, 47 Tex. 459, 26 Am. Rep. 304, Branch v. Weiss, 23 Tex. Civ. App. 84, 57 S. W. 901, and the authorities cited by these authorities are decisive of this point.

We believe that the proper conclusion was arrived at by the able trial court upon the facts of the case, as they appear of record, and no errors appearing upon the trial of the cause, it is therefore affirmed.

Affirmed.