## MUNGER OIL & COTTON CO. v. BECKHAM.    (No. 213—3321.)

(Commission of Appeals of Texas, Section B. March 2, 1921.)

**1. Judgment ⬡197—Dismissal after trial called and declaration of ready improper.**

Where a case had been regularly called for trial, and both parties had announced themselves ready, and certain exceptions filed by defendant had been sustained, and others overruled in part and sustained in part, and where plaintiff did not take a nonsuit, or ask that the case be continued or postponed or placed at the end of the docket, but refused to go forward with his case, the only proper judgment the court could enter was one for the defendant, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1944, and a judgment of dismissal would have been improper.

**2. Appeal and error ⬡719(8)—Error in form of judgment not corrected in absence of assignment of error.**

Where plaintiff refused to go forward with his proof after court had sustained exceptions filed by defendant, and had overruled others in part and sustained them in part, action of court in rendering judgment for defendant instead of rendering judgment of dismissal, even if error, could not be corrected by the Court of Civil Appeals, in the absence of an assignment of error complaining of the form of the judgment, such error not being apparent on the face of the record.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by J. J. Beckham against the Munger Oil & Cotton Company. Judgment for defendant reformed so as to be one of dismissal, and as reformed affirmed by Court of Civil Appeals (209 S. W. 186), and plaintiff brings error. Judgment of Court of Civil Appeals reversed and that of district court affirmed.

C. S. Bradley, of Groesbeck, A. B. Rennolds, of Mexia, and Coke & Coke, of Dallas, for plaintiff in error.

W. T. Jackson, of Groesbeck, and O. Kennedy, of Mexia, for defendant in error.

POWELL, J. This is an action in damages instituted in the district court of Limestone county, Tex., by J. J. Beckham against the Munger Oil & Cotton Company, based upon the alleged breach of a contract entered into by and between said parties on April 1, 1913. Beckham was the owner of some 800 acres of farm land, nearly all of which was in cultivation. He had operated

---

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

a gin himself on said plantation. In close proximity was situated a blacksmith shop, a store, and a residence for the storekeeper. His gin burned. Rather than rebuild himself, he made a contract with plaintiff in error, under which the latter agreed to build a gin on the gin tract belonging to Beckham. The latter, on the same day, executed a deed to the former, conveying several acres as a ginsite, and accepting $800 for the execution of said deed. The gin was erected and operated for two years by the Munger Company. Finding its further operation unprofitable, the gin was removed from Beckham's land and its operation there discontinued.

Thereupon Beckham sued the Munger Company, alleging that, under his contract with the latter, the latter was obligated to continue operating said gin for a period of 15 years, and that the company had ceased operation 13 years before it had a right to do. Of said 13 years, about two and a half years had already passed when the suit was called for trial in September, 1917. Beckham alleged that the said contract of April, 1913, *expressly* provided for 15 years' *operation* of the gin; that if he was mistaken in that contention, it was the intention of the parties that the contract should so provide, and, if it did not so provide, it was due to a mutual mistake; that if he was still further mistaken in said last allegation, then the contract certainly provided that the Munger Company should operate the said gin a *reasonable* time. Attached to the petition was a copy of said contract, which speaks for itself.

On October 21, 1914, Beckham deeded to the Munger Company a residence lot near the gin for the use of the gin manager.

In his petition Beckham specified many elements of damage which he had sustained because of the breach of said contract. They were:

(1) Loss of rental on blacksmith shop for thirteen years at $50 per year. Beckham pleaded that his inability to rent said shop was due to the removal of the gin. (2) Loss of value of waste from the gin, which would have fertilized his farm and been worth $50 per year thereto for thirteen years. (3) Loss of an opportunity to sell 200 cords of wood to the gin each year at an annual profit of $100 for thirteen years. (4) Loss of rental on store and residence for thirteen years, at $180 per annum. (5) Loss of $10 per acre in value of 800 acres of land, due to the fact that only a poor class of tenants could be obtained in the absence of a gin. (6) Loss due to the extra expense of $1.50 per bale for carrying his average annual crop of 300 bales of cotton to the next nearest gin. He asked for $450 each year for thirteen years. (7) Defendant in error asked for cancellation of his deeds conveying to the Munger Company the gin and residence sites.

In the alternative, Beckham prayed for damages as follows:

228 S.W.—9

(1) $10,000 required to erect a gin on said site himself. (2) $19,500, representing an annual loss of $1,500 in the operation of said gin for thirteen years, after he had it erected and in operation. (3) $5,000 depreciation during said period of time in the value of said new gin.

The plaintiff in error answered by general and special demurrers and general denial, together with certain other defensive pleas. Among the latter was the paragraph setting up the reconveyance of the residence and gin sites to Beckham, and a willingness of the plaintiff in error for Beckham to build his own gin on said premises at his pleasure. Plaintiff in error further pleaded that if there was any mutual mistake in the failure of the contract to provide for the operation of the gin for 15 years, the said mistake could not be corrected for the reason that the pleading which first set up said contention was filed more than 4 years after the contract was made. There was no prayer for affirmative relief and nothing by way of cross-action.

The judgment of the trial court shows that the case was regularly reached on the docket and called for trial on September 12, 1917, when came the plaintiff by his attorneys and announced ready for trial, as did the defendant, through its attorneys. Thereupon the court took up for consideration the various special exceptions in defendant's answer. The defendant had directed an exception to each element of damage alleged by plaintiff, said exceptions in the main being based upon the ground that said damages were not in the contemplation of the parties to the contract and were remote and speculative. The court sustained them all, except the following: He ruled that Beckham would be allowed to introduce proof of losses, if any, sustained, with reference to three items, between the time the operation of the gin was discontinued and the case was called for trial. The three items were:

Diminution in rental value of the blacksmith shop; diminution in rental value of storehouse and residence; increased cost of hauling cotton from Beckham's farm to the nearest gin.

The effect of the court's ruling upon said exceptions was that Beckham was not entitled to recover anything for damages that might arise after the trial, and for none that had arisen prior to the trial, except with reference to the items just above set out. Beckham's counsel excepted to the ruling of the court on these exceptions, and then announced that he would not offer any testimony. The court then rendered judgment for the defendant. The defendant in error excepted to the judgment of the court as a whole, and gave notice of appeal. In due time he assigned several errors, filing same in the trial court, and urging the same in the Court of Civil Appeals. All of said assignments of error as-

sailed the action of the trial court in its rulings upon the exceptions. Not one of the assignments objected to the form of the judgment entered by the trial court, and no contention was made at any time, or anywhere, by Beckham that the trial court should have dismissed the case when defendant in error refused to proceed, and not render judgment for the Munger Company. The Court of Civil Appeals reformed the judgment of the trial court, setting aside the judgment for plaintiff in error, and dismissed the case. Said court held that the only proper judgment, under the circumstances, was one of dismissal, and that, although no such error had been assigned, the court itself would treat it as an error apparent of record and proceed accordingly.

The Court of Civil Appeals further held that, in refusing to proceed with that part of the case left open by the trial court, Beckham had abandoned his case and was not entitled to an appeal. Therefore the court refused to consider his assignments of error attacking the action of the trial court sustaining various exceptions urged by the Munger Company. The opinion of the Court of Civil Appeals is published in 209 S. W. 186.

Beckham filed a motion for rehearing in the Court of Civil Appeals, as did the Munger Company. Even in this motion Beckham still did not complain of the form of the trial court's judgment. The Court of Civil Appeals in due time overruled both motions for rehearing.

The plaintiff in error filed application in the Supreme Court for writ of error attacking the action of the Court of Civil Appeals in reforming the judgment of the trial court and dismissing the case. The defendant in error did not apply to the Supreme Court for writ of error attacking the failure of the Court of Civil Appeals to consider his assignments of error. Nor has he filed any argument or additional brief in the Supreme Court.

We think the Court of Civil Appeals erred in holding that, under the circumstances of this case, the only judgment the trial court could have properly entered was one of dismissal. On the contrary, we think the court entered the only proper judgment under the circumstances. We are not unmindful of several decisions of the appellate courts of Texas which seem to sustain the ruling of the Court of Civil Appeals. Before proceeding to discuss the reason for our view of this matter, a brief review of the authorities may be helpful.

Trial courts have frequently dismissed cases for want of prosecution when regularly called on the docket and no one appeared to prosecute them. This practice was approved by the Supreme Court in the case of Houston v. Jennings, 12 Tex. 487. In that case neither party appeared, and an order of dismissal was the only proper one. The writer is not so sure that a dismissal for want of prosecution would be proper when the case is regularly called and either party is present, demanding a trial. In fact, in spite of the authorities apparently holding otherwise, I seriously doubt it. It seems to me that all parties to a suit must be required to exercise diligence and watch their cases and attend upon the courts. But the authority above quoted is not in point in the case at bar, for here both parties were present and had announced ready for trial.

In the case of O'Neal et al. v. Wills Point Bank, 64 Tex. 644, the Supreme Court held a judgment of dismissal for want of prosecution proper. But in that case it does not appear that the parties had announced ready for trial on the merits. Nor does the court there say that a judgment for the defendant would have been improper. As a matter of fact, the judgment of the lower court in said cause was practically as effective as would have been a straight judgment for the defendant. In dismissing the case the trial court refused the injunction prayed for, and rendered judgment in favor of the bank on the injunction bond for $380 and costs. Said judgment was affirmed.

In the case of Burger v. Young et al., 78 Tex. 656, 15 S. W. 107, the Supreme Court held that the judgment should have been one of dismissal rather than one for the defendants. But in that case the plaintiff never did announce ready for trial. In fact, he appeared only for the purpose of seeking a continuance. When his motion was overruled he refused to make any further announcement, read his pleadings, or offer any evidence. In that state of the record the Supreme Court very properly said that plaintiff had just as effectually abandoned his case as if he had failed to appear at all. Nor does it appear that the defendants in that case were present demanding a trial.

The controlling question in the case of Harris v. Schlinke, 95 Tex. 88, 65 S. W. 172, had to do with the necessity for service of notices upon plaintiffs of a cross-bill filed by the defendant.

[1] Coming back to the case at bar, let us look at the situation which confronted the trial court. The case had been regularly called for trial. Both parties had announced ready. Certain exceptions filed by the Munger Company had been sustained, and others overruled in part and sustained in part. Beckham, at that time, could have taken a nonsuit. He did not avail himself of that statutory privilege. It is well settled that the court could not take the nonsuit for him. See Guest v. Guest, Dallam Dig. 394. As he did not take a nonsuit, we think article 1944 of Vernon's Sayles' Revised Civil Statutes of Texas controlled the court. Said article provides:

"Every suit shall be tried when it is called, unless it be continued or postponed to a future

day of the term, or be placed at the end of the docket to be called again for trial in its regular order."

Beckham did not withdraw his announcement of ready for trial and ask for a continuance or postponement. He did not ask that the case be placed at the end of the docket. There was no necessity for that action by the court apparent of record. There being no request for any other procedure from any of the parties, it seems to us, under said statute, it was the duty of the court to *try* the case. That being true, the burden of proof was upon Beckham to establish his case by a preponderance of the evidence. Having failed to discharge said burden, we submit that the only proper judgment the court could enter was one for the Munger Company. Said article of the statute does not provide for dismissals, unless a dismissal could be construed to be a trial. Doubtless the Legislature thought the statute authorizing plaintiffs to take nonsuits was sufficient in that connection. The courts are not to be trifled with. A man will not be permitted to act as Beckham did in this case and be entitled to a dismissal of his case. Defendants frequently have no grounds for seeking affirmative relief, and, even though they file no cross-action, they want to put an end to suits. Dismissals do not bring said relief. We think they are certainly entitled to such relief when plaintiff is present, does not ask for a nonsuit, and announces ready for trial.

We call attention now to a few authorities which indicate a tendency on the part of the Supreme Court to sustain our views as above expressed.

In the case of Hurt v. Horton, 12 Tex. 285, Chief Justice Hemphill indicates that a judgment might be rendered even though no evidence be introduced. He speaks as follows:

"In relation to the second assignment, it does not appear that there was any attempt to introduce any evidence in support of the issues made by the parties, and there was consequently no error in deciding the cause upon the record alone."

As indicating the necessity for action by the plaintiff in seeking a continuance or an opportunity to amend his pleadings in order to avoid rendition of an adverse judgment, we quote as follows from the Supreme Court in Hale v. McComas, 59 Tex. 484:

"The appellant assigns as error 'the ruling and judgment of the court in dissolving the injunction and dismissing the petition, and in rendering final judgment for defendants McComas & Co. on their original account against plaintiff and his sureties on the injunction bond, without giving the plaintiff an opportunity to be heard in his defense against said account.'

"The first of these propositions is decisive of the latter; for, if the injunction was correctly dissolved for want of equity in the bill, the proper judgment of the court upon that order would be to render judgment against the plaintiff and the sureties on his injunction bond for the principal sum enjoined, including the ten per cent. damages, unless the plaintiff sought to amend his petition after the court held the petition insufficient under said order. But here it does not appear that the plaintiff asked leave to amend his petition, or to otherwise provide for supplying the want of equity in his bill, nor to delay the hearing of the cause, in order that he might be enabled to meet the objections which had been sustained to his petition."

The judgment of the trial court was affirmed.

The views just expressed in Hale v. McComas, supra, are also found in Baldridge v. Cook, 27 Tex. 566.

The Court of Civil Appeals for the Third District held that a judgment could be rendered against a party on certain issues, even though no evidence concerning them was before the jury; that is, the mere failure, through neglect, to discharge one's burden of proof, does not necessarily entitle him to a dismissal of part of the case.

We quote from Justice Key in the above case as follows:

"Appellee files a cross-assignment complaining of the action of the court in not permitting it to take a nonsuit as to the issue of rents. Appellee sued for the land, and also for rents; and, having failed to make the necessary proof to recover on the latter issue, its counsel, in making the closing argument, admitted that appellee had neglected to make such proof, and asked permission to take a nonsuit as to this issue, which the court refused to grant, and rendered judgment against the plaintiff on the issue of rents. There was no error in this ruling. The plaintiff had sued for the rents as well as the land; and offering no excuse, other than neglect, for failure to make sufficient proof on that issue, it was not entitled to a nonsuit, and the court properly rendered judgment against it on that branch of the case." Ry. Co. v. Compress Co., 23 Tex. Civ. App. 441, 56 S. W. 367.

The Supreme Court denied a writ of error in said case.

It follows from what has been said that we think the Court of Civil Appeals erred in holding that the only proper judgment the trial court could enter was one of dismissal. In our judgment, the trial court entered the proper decree.

[2] However, even if the Court of Civil Appeals correctly held that the judgment of the District Court should have been one of dismissal, we still think the former court erred in reforming the judgment of the trial court and dismissing the case, for the reason that no one requested any such relief. No assignment of error was ever filed anywhere complaining of the form of the trial court's judgment. The Court of Civil Appeals says this error of the trial court was one apparent on the face of the record, and could therefore be considered by said court of its own mo-

tion. Said court does not cite any authorities sustaining its position. We have found one Court of Civil Appeals case which does so. We refer to the case of Drummond v. Lewis, 157 S. W. 266. In that case the Court of Civil Appeals at San Antonio, in the absence of any assignment of error relating thereto, reformed a judgment for defendant and made it one of dismissal. That case did not reach the Supreme Court. It is not exactly analogous to the case at bar, for the plaintiff in said case did not appear in person or by attorney when the case was tried. But, even if said authority is in point, we think the doctrine there announced is unsound.

We do not think an error of this kind is one apparent on the face of the record, and which should be corrected without an assignment of error urging the same. There are two decisions by the Supreme Court which are, at least, persuasive in supporting our views. We first call attention to the case of Brown v. Pfouts, 53 Tex. 221. In this case the trial court permitted a voluntary nonsuit, although defendant had a plea in reconvention pending. The Supreme Court held that such a judgment could not properly be entered. But the judgment was affirmed because no objection was urged to the nonsuit at the time it was taken. In other words, the defendant had waived his right to object to an improper judgment.

Again, we refer to the case of Browning v. Pumphrey, 81 Tex. 163, 16 S. W. 870. In that case Chief Justice Stayton says:

"When the action brought on March 24, 1887, was called for trial, plaintiffs therein did not appear, either in person or by attorney, and the defendants having alleged title in themselves, and that the claim of plaintiffs was a cloud upon it, and asked that this be removed, the court heard the case upon its merits, and rendered a judgment in favor of defendants in accordance with their prayer, after which the plaintiffs filed a motion for a new trial, which was overruled, and from that judgment no appeal was prosecuted.

"The answer in that case did not seek any relief that would not have been as fully secured by a judgment in favor of the defendants as by a judgment removing cloud from their title; and proper practice on the failure of plaintiffs to be present and prosecute their action would have required that the cause should be dismissed without any further action. But we are not prepared to hold that the court had not jurisdiction to try the cause on its merits, and to render the judgment entered, even in the absence of plaintiffs and their attorneys, and, if the action of the court in this respect was not proper, plaintiffs might have had relief by appeal."

In the case last cited the improper judgment could not be reformed, because there was no appeal. In the case at bar there was an appeal, but, so far as the form of the judgment was concerned, there really was no appeal. The fact is that the trial court had jurisdiction of the parties and the subject-matter in the case at bar. The judgment entered was certainly not such a one as could not be agreed to by the parties. That the form of the judgment was satisfactory to Beckham is shown conclusively by his failure, from beginning to end, to ever offer any objection to it.

Defendant in error had the right and the power to admit in open court that he had no cause of action upon the pleadings as they stood after the ruling of the trial court upon the special exceptions. The trial court evidently put that construction upon his action and rendered judgment accordingly. Beckham's counsel stood by and took no exception to this action unless a general exception to the judgment may be so interpreted. Under these circumstances, the court's action, in our opinion, was not error of law apparent upon the face of the record; but, if error at all, was one which went to the form of the judgment rendered, and not to the fundamental power of the court to act as it did in the premises. Being an error of such character, the Court of Civil Appeals was without jurisdiction to pass upon it, unless urged as required by law.

It follows that, as before stated, we think the Court of Civil Appeals should have affirmed the judgment of the district court even though the latter was not a so-called proper judgment, because no error in connection therewith has been assigned.

The Court of Civil Appeals held that, by pursuing the course he did upon the trial, Beckham forfeited his right to appeal, and refused to consider his assignments of error directed to the action of the trial court in sustaining various exceptions. We do not consider this question properly before us. It is not raised in the petition for writ of error filed by plaintiff in error, and the defendant in error did not pursue his remedy and apply for a writ, when his motion for rehearing was overruled by the Court of Civil Appeals. We do not pass upon said ruling of the latter court refusing to consider Beckham's assignments of error. We may say, however, in passing, that we have read the record carefully, and, if said assignments were considered, the action of the trial court on the exceptions would probably be sustained.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.